In the Matter of the Application of PETER W. FRASER et al., Appellants, for a Peremptory Writ of Mandamus against WILLIAM E. BROWN et al., Constituting the Board of Inspectors of Election for the Second Election District of the Town of Rutland, Respondents.

Election Law — registration of electors — unconstitutionality of the statute (L. 1911, ch. 649, § 6) requiring personal registration of electors residing outside of cities or villages with a population of five thousand or more.

1. Whatever is necessary to render effective any provision of a Constitution, whether it is a grant, restriction or prohibition, must be deemed implied and intended in the provision itself. Hence,

when the Constitution provides that certain voters "shall not be required to apply in person for registration at the first meeting of the" inspectors, it is implied that the legislature is prohibited from passing any statute to the contrary, because that implication is necessary to render the provision effective.

2. The legislature exceeded its power in providing that all voters residing outside of cities or villages with a population of five thousand or more whose names do not appear on the poll book of the last general election shall apply in person in order to be registered, and the attempt to impose this requirement, as made by section 6 of chapter 649 of the Laws of 1911, is unconstitutional and void.

*Matter of Fraser* v. *Brown*, 146 App. Div. 898, reversed.

(Argued October 2, 1911; decided October 10, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 28, 1911, which affirmed an order of Special Term denying as matter of law, and not in the exercise of discretion, a motion for a peremptory writ of mandamus requiring the registration of the appellants without their personal appearance before the board of election inspectors.

The facts, so far as material, are stated in the opinion.

*Elon R. Brown* and *Henry H. Babcock* for appellants. Section 159 of the Election Law, as amended by chapter 649 of the Laws of 1911, is unconstitutional, because it requires personal registration by large numbers of voters not residing in cities or villages. (Const. of N. Y. art. 2, § 4.)

*D-Cady Herrick, Abram I. Elkus* and *George R. Van Namee* for respondents. Section 159, as amended by chapter 649 of the Laws of 1911, is in conformity with the Constitution. (*People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People ex rel.* v. *Briggs*, 50 N. Y. 554; *People* v. *Gillson*, 109 N. Y. 389; *People ex rel.* v. *Rice*, 135 N. Y. 484; *Matter of Ahern* v. *Elder*, 195 N. Y. 493; *Rathbone* v.

*Wirth,* 150 N. Y. 475; *Matter of Albany Street,* 11 Wend. 148.) The statute will not be declared unconstitutional by reason of any alleged violations of the spirit of the Constitution or of the implications to be derived therefrom. (*People ex rel. Sinkler* v. *Terry,* 108 N. Y, 1; *People ex rel.* v. *Tax Comrs.,* 174 N. Y. 417; *People ex rel.* v. *Lochner,* 177 N. Y. 145.)

VANN, J. The counsel for the respondents waive all irregularities and unite with the counsel for the appellants in urging a decision of this appeal as soon as possible, so that the result may be known in time to govern inspectors of election in preparing the registry lists for the annual election now near at hand. The limited time at our disposal while the court is in session renders extended discussion impossible, but as the single question involved is within a narrow compass and does not require elaborate treatment, the interest of the public leads us to a brief expression of our views at the earliest moment practicable after they were matured in consultation.

The question presented for decision is whether the amendment of section 159 of the Election Law, as made by section six of chapter 649 of the Laws of 1911, is a violation of section four of article two of the Constitution of our state. Stated in another form the question is whether the legislature has the constitutional power to prohibit the registration of a duly qualified elector, who did not vote at the last general election and who does not reside in a city or village with a population of five thousand or more, without his personal appearance before the board of inspectors.

The Constitution provides that "Laws shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters; which registration shall be completed at least ten days before each election. Such registration shall not be required for town and vil-

lage elections except by express provision of law. In cities and villages having five thousand inhabitants or more, according to the last preceding state enumeration of inhabitants, voters shall be registered upon personal application only; but voters not residing in such cities or villages shall not be required to apply in person for registration at the first meeting of the officers having charge of the registry of voters." (Article 2, § 4.)

The Election Law prior to the amendment in question provided as follows:

"§ 150. Meetings for registration. Before every general election, the board of inspectors for each election district in every city, and in villages having five thousand inhabitants or more, shall hold four meetings for the registration of the voters thereof, at the place designated therefor, to be known respectively as the first, second, third and fourth meetings for registration. * * * In all election districts other than in cities or villages having five thousand inhabitants or more, the board of inspectors of election for each such election district shall hold two meetings for the registration of voters thereof, at the places designated therefor, before each general election, namely, on the fourth and third Saturdays before the election, to be known respectively as the first and second meetings for registration, * * *."

"§ 159. At the first meeting for registration in any election district where only two meetings for the registration of voters are held for any general election, as provided in section one hundred and fifty of this article, the inspectors shall place upon the register the names of all persons who voted at the last preceding general election, as shown by the register or poll book of such election, except the names of such voters as are proven to the satisfaction of such inspectors to have ceased to be voters in such district since such general election, and also at said first meeting and at the second meeting, they shall place on the register the names of all persons known or proven

to the satisfaction of the inspectors to be then or thereafter entitled to vote at the election for which such registration is made." (L. 1909, ch. 22.)

Section 159 of the Election Law, as amended by section six of chapter 649 of the Laws of 1911, is as follows: "At the first meeting for registration in any election district wholly outside of a city or a village having five thousand inhabitants or more, the inspectors shall place upon the register the names of all persons who voted at the last preceding general election, as shown by the register or poll-book of such election and also those presenting themselves in person, except the names of such electors as are proven to the satisfaction of such inspectors to have ceased to be electors in such district since such general election, and upon all days of registration the names of all other persons who may appear in person before the said board and apply for registration and who are or who will be at the election for which the registration is made qualified electors."

The effect of the amendment is to require all voters residing in the country who did not vote at the last general election to apply in person in order to be registered at the first meeting of the inspectors, for obviously no voter can be registered except as authorized by the amendment.

We think that the Constitution, in providing that voters residing in rural districts shall not be required to apply in person at the first meeting of the officers having charge of the registry of voters, necessarily implies that such voters may be registered at that meeting without applying in person. We quote again the last sentence of the constitutional provision: "In cities and villages having five thousand inhabitants or more, * * * voters shall be registered upon personal application only; *but voters not residing in such cities or villages shall not be required to apply in person for registration at the first meeting of the officers having charge of the registry of voters.*"

This is a single sentence consisting of two clauses, which must be read together in order to discover the meaning of the sentence as a whole. The entire sentence divides voters into two classes, depending on the political division in which they reside. The first clause applies exclusively to voters who reside in cities or villages with the population named, and expressly restricts the registration of that class to such as apply in person. The second clause applies exclusively to voters who do not reside in such cities or villages and impliedly permits the registration of that class at the first meeting of the officers in charge without personal application. The second clause commences with the word "but," which, as thus used, indicates transition of thought or a change in the nature of the rule, and reading on we find the change to be that voters residing in country districts need not apply in person at the first meeting. While the legislature may provide that an application must be made by a voter of either class, it cannot provide that those belonging to the second, or such as reside in rural sections, shall apply in person on the first day, although it may require them to apply by letter, or through an agent, or in any reasonable way that it sees fit, other than by personal application. The obvious reason for the distinction is that personal appearance before the board is much less convenient in those localities where many of the electors live far from the place of registration, than in cities and villages where they live comparatively near. In some towns certain voters would have to travel many miles over poor roads and it may be in bad weather, in order to appear in person to be registered. This would be a hardship tending to hinder registration in many cases, and in the case of some aged or infirm electors, a hardship so severe as to prevent their registration altogether. The discussion in the constitutional convention tends strongly to show not only that this was the reason for making the discrimination, but that the provision was understood to

mean that voters from farming communities could be registered on the first day without attending in person, even if they did not vote the year before. (Revised Records Cons. Conv. of 1894, vol. 4, pp. 111, 112 and 716 to 723; Lincoln's Cons. History, vol. 3, pp. 102 to 107.)

If the Constitution does not mean this, what does it mean? What was the object of the last clause of the sentence in question? It has some important function to perform or it would not appear in a solemn and dignified instrument enacted by the people themselves as the structural law of the state. If it was intended, as the respondents claim, to permit registration by copying the last poll list, it does not say so. No such idea would be suggested to the minds of the "plain people" for whom the Constitution was written. Moreover, no such permission was needed, for independent of the last clause, the legislature may make reasonable regulations to govern registration, provided they do not conflict with any constitutional requirement. If by the last clause it was intended simply to require more than one day for registration in country districts, as the respondents also claim, why was it not required expressly, instead of in a roundabout way, resting wholly on an implication for which we find no warrant in the language of the Constitution?

"Proper proofs" may be required by the legislature and, within the limits of reason, the nature of the proof is under its control, except that proof involving personal appearance cannot be required on the first day. Proof by affidavit, or by the testimony of a third person may be required by statute, but if the proof so required is furnished at the first meeting, to the satisfaction of the inspectors, the legislature can neither authorize nor require those officers to refuse to register without the personal appearance of the applicant. That is one thing that it is prohibited from doing.

It is true that the prohibition rests on implication, but

so do many commands of the Constitution, including the construction contended for by the respondents. No Constitution was ever drawn so as to be an effective foundation for the government of a state without applying thereto the doctrine of implication. It is well established that whatever is necessary to render effective any provision of a Constitution, whether it is a grant, restriction or prohibition, "must be deemed implied and intended in the provision itself." (Black's Constitutional Law, 78; Endlich on Interpretation of Statutes, § 535; Story on the Constitution, § 428, and cases cited.) Hence, when the Constitution provides that certain voters "shall not be required to apply in person for registration at the first meeting of the" inspectors, it is implied that the legislature is prohibited from passing any statute to the contrary, because that implication is necessary to render the provision effective.

After considering the question with the serious concern which its importance demands, we are compelled to adjudge that the legislature exceeded its power in providing that all voters residing outside of cities or villages with a population of five thousand or more whose names do not appear on the poll book of the last general election, shall apply in person in order to be registered and that the attempt to impose this requirement, as made by section six of chapter 649 of the Laws of 1911, is unconstitutional and void. As this is a test case and the respondents not only acted in good faith but co-operated with the appellants in the effort to settle the law for the benefit of the public at large, no costs are allowed to either party.

The orders should be reversed and the motion for a peremptory writ of mandamus granted, without costs.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Orders reversed, etc.