BARWICK *v.* ROBERTS, commissioner, *et al.*

No. 12935.   September 14, 1939.

**656**

*J. Ira Harrelson* and *Jackson L. Barwick,* for plaintiff.

*Ellis G. Arnall, attorney-general, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* for defendants.

DUCKWORTH, Justice.    J. W. Barwick brought a petition for mandamus against Columbus Roberts as Commissioner of Agriculture and George B. Hamilton as State Treasurer, praying that Roberts be required to draw a warrant or other appropriate order on the treasurer, payable to petitioner, for $2500, to be increased $100 for each month after January 1, 1939; and that Roberts be required to request the Governor to draw his warrant directed to the treasurer for the payment to petitioner of said sums; that Hamilton as treasurer be required to pay said sums to petitioner; and that Hamilton be required to honor and pay such warrant or other order when presented to him.    The petition alleged that by virtue of a statute (Ga. L. 1935, pp. 369, 372) the Commissioner of Agriculture, then Tom Linder, in consideration of the transfer and assignment by petitioner of a number of leases embracing lands where the State farmers market is located in Atlanta to the commissioner, which assignment recited a consideration of one dollar and other valuable consideration, agreed and promised to pay petitioner $100 per month until February 1, 1941, or so long as the department continues in possession of said property; and that none of such monthly payments have been made to petitioner by Roberts, who succeeded Linder as Commissioner of Agriculture on January 1, 1937.    The defendants filed general demurrers on the ground that the petition alleged no cause of action. The demurrers were sustained, and the action dismissed. The plaintiff excepted. This is the second appearance of this case in this court.    On its former appearance a judgment dismissing on demurrer a suit against Commissioner Roberts, seeking a judgment for the amounts claimed to be due, was excepted to; and this court held that the action was one against the State, and was properly dismissed. *Roberts* v. *Barwick,* 187 *Ga.* 691 (1 S. E. 2d, 713).    A full and complete detail of the facts involved in the present case is given in that case as reported. The facts are substantially the same on both appearances, save the nature of the proceedings.

■    In so far as Hamilton as State Treasurer is concerned, the

petition failed to allege that any warrant to pay the claim had ever been presented to him. It did not appear that he ever had opportunity to perform his official duty with reference to payment of any such warrant, or that he had refused to perform any duty imposed upon him by law. The Code, § 40-1101, declares that the State Treasurer shall receive and keep safely all the money paid to him in behalf of the State, and "pay out the same only upon the warrants of the Governor, when countersigned by the Comptroller-General," excepting the drafts of the presiding officers of the General Assembly. Under this statute he has no duty to pay out any money except on warrants signed by the Governor and counter-signed by the Comptroller-General, or by either of the presiding officers of the General Assembly. Until an order for the payment of money, signed by the parties named in the law has been presented, the treasurer not only has no duty to pay out money, but could not do so without violating the law as well as his oath of office. The Code, § 64-101, authorizes the writ of mandamus against a public officer to compel due performance of official duties, if there be no other specific legal remedy for the legal right. The law applicable to the facts in this case is plain. "Mandamus will not be granted when it is manifest that the writ would, for any cause, be nugatory or fruitless; nor will it be granted on a mere suspicion or fear, before a refusal to act or a wrongful act done." Code, § 64-106. See *Pearce* v. *Bembry,* 174 *Ga.* 86 (162 S. E. 125). Any public officer is entitled to have an opportunity to faithfully perform his official duties voluntarily before he is stigmatized with a writ of mandamus to compel him to perform his duties. The petition wholly failed to allege a cause of action against this defendant, and as to him it was properly dismissed on demurrer.

■ Whether the petition alleged a cause of action against Roberts depends on a number of factors involved in the case. First, the petition alleged that plaintiff was entitled to be paid $100 per month, as a consideration for assignment of a number of leases. The question immediately arises as to whether this alleged agreement offended the constitution. The debts against the State that can be created are named in the constitution, and all others are expressly prohibited. No debt shall be contracted by or on behalf of the State, except (a) to supply temporary deficits caused by delay in collecting taxes for the year, (b) to repel invasion, (c) to

suppress insurrection, (d) for defense in time of war, (e) to pay the public debt, and (f) to borrow three and a half millions of dollars to pay school-teachers. Art. 7, sec. 3, par. 1 (Code, § 2-5101). Elaborate definition of the word "debt" as used in the constitution is altogether unnecessary. There is hardly an adult layman in the State who does not understand fully the meaning of that word as so used. It means any obligation of the State to pay money or other thing of value, which obligation arises the very moment that it is undertaken, and continues until discharged by payment. The alleged obligation of the State to pay to the plaintiff herein does not fall within any of the purposes for which the constitution authorizes the creation of a debt. As alleged in the petition, it would have obligated the State to pay to the plaintiff over a long term of years $100 per month. Therefore it would constitute a debt, and is inhibited by the constitution.

■ But it is strongly urged by the plaintiff that he has fully performed his part of the alleged contract by making the outright assignment of the leases to the State, and that such performance on his part accepted by the Commissioner of Agriculture entitles him to enforce the terms of the contract and require performance by the defendant. It is argued that this contention is supported by the ruling in *City Council of Dawson* v. *Dawson Waterworks Company*, 106 *Ga.* 696 (8), 735 (32 S. E. 907), where it was said: "While either party to the contract in question can terminate it at the end of any year, as long as it stands and is complied with by one party the other must comply also." As authority for this ruling the court cited *Ford* v. *Cartersville*, 84 *Ga.* 213 (10 S. E. 732); *Lott* v. *Waycross*, 84 *Ga.* 681 (11 S. E. 558); *Cartersville Improvement Co.* v. *Cartersville*, 89 *Ga.* 683 (16 S. E. 25); *Dawson Waterworks Co.* v. *Carver*, 95 *Ga.* 565 (20 S. E. 502). We have examined each of these decisions, and find that neither of the decisions in 84 *Ga.* supports the language used by Mr. Justice Cobb in 106 *Ga.* The *Ford* decision, after ruling that the contract there involved was void because for more than one year, in violation of the constitution, held that the city should pay for the water and gas actually received and used. This ruling is sound; for our law provides that one shall not be unjustly enriched at the expense of another; and the remedy of an action for money had and received in such cases is authorized. See *Butts County* v. *Jackson*

*Banking Co.,* 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. 567, 121 Am. St. R. 244). The ruling that the city should pay for water and gas used was based, not upon a liability therefor under the contract, but upon a duty to pay independently of the contract. This rule can not be applied in the present case, because (a) in such recoveries the amount is not fixed by the contract, but is determined by the actual proved value to the party receiving the benefit of performance by the other, and mandamus will not lie to fix such amount and then compel its payment; and (b) the relator bases his action upon an alleged contract, and since the contract fails his action must likewise fail. Finally, were these obstacles removed, an insurmountable one is encountered when it is sought to compel an officer to perform a duty not imposed by law, and certainly Roberts is not required by law to pay quantum meruit claims against the State; and while the cities in the cases referred to could be sued without consent, such a rule does not obtain as to the State, and no consent to be sued is shown to have been given in the present action. *Roberts* v. *Barwick,* supra. In the *Lott* case the court expressly declined to make a ruling on the legality of the contract there involved. It is not authority for the ruling that part performance on one side of an invalid contract enables that party to compel performance on the other side.

In the *Dawson Waterworks* case it was ruled that it was not error to refuse to enjoin the payment for water already consumed, whether the contract involved was legal or illegal. This ruling simply means that the contract had nothing to do with the ruling; and that if the contract was found to be void, the city would still be authorized to pay for the actual value of water it received and consumed. The only decision relied upon for the ruling that actually supports it is *Cartersville Improvement Co.* v. *Cartersville,* supra. The last sentence of the first headnote in that case is in the exact language used in the above ruling. But in division 6 of the opinion in *City Council of Dawson* v. *Dawson Waterworks Co.,* supra, it was held that part or even full performance of a void contract would not render the contract enforceable, or estop the other party from pleading the invalidity of the contract. This ruling was in the following language (106 *Ga.* 734) : "Even if a benefit has been received by one of the contracting parties from a contract which is void because prohibited by the constitution, or

because contrary to public policy, the receiving of such benefit will not prevent the party receiving it from setting up against a suit to enforce the contract the defense that the contract was illegal and void. See *Covington & Macon Railroad Co.* v. *Athens*, 85 *Ga.* 367 (11 S. E.. 663). To establish the rule that all that is necessary to prevent a city from pleading that under the constitution and laws of the State it could not incur the indebtedness sought to be charged against it would be to show that the alleged illegal contract had been fully performed on one side, would place entirely within the power of persons desiring to make illegal contracts the determination of the question as to whether the constitution of the State shall be enforced in a particular instance." This ruling was made on the contention that the city should not be allowed to set up the defense that the contract was illegal, because the other party to the contract, upon the faith of the contract, had expended large sums of money in constructing the plant necessary to perform its part of the contract. The *Athens* case cited as authority amply supports the ruling. In that case the railroad had expended approximately $19,000 in performing its part of the contract. This court held that such performance would not render the contract enforceable, and it was said: "Money expended in fulfillment of such contract, and on the faith of the promise, is not due for purely charitable·purposes, but for the interest and purposes of the railroad company; and even were it shown that the city received any benefit from the contract, the same is void as contrary to public policy." The language "even were it shown that the city received any benefit from the contract, the same is void as contrary to public policy," supports the ruling in division 6 of the opinion in the *Dawson* case. It is apparently not in harmony with the language used in division 8 of the same opinion, and in *Cartersville Improvement Co.* v. *Cartersville*, supra. But, being older than either of such rulings, it must control if there is conflict.

Accordingly, in passing upon this contention, we follow the rule so clearly defined in division 6 of the opinion in *City Council of Dawson* v. *Dawson Waterworks Co.*, supra, and hold that no performance of his part of the unconstitutional contract here involved by the plaintiff will serve the purpose of breathing into it the breath of life and causing it to become valid and enforceable at law in defiance of the plain mandate of the constitution. In

*Epping* v. *Columbus,* 117 *Ga.* 263 (43 S. E. 803), Mr. Justice Cobb, who announced the ruling in the *Dawson Waterworks* case, said: "The City of Dawson undertook to make a contract with the waterworks company, by which it agreed to pay the company during a term of years a stated sum annually for the use of water. This was an undertaking on the part of the city to pay an indebtedness, the amount of which was represented by the aggregate sum which would be due during the period the contract was to continue. This was the debt, and the principal of the debt, and under the contract it was divided up into annual installments. It was then held that this was a debt within the meaning of the constitution, and that the City of Dawson had no right to incur the same without submitting the contract to the popular vote." In *Renfroe* v. *Atlanta,* 140 *Ga.* 81 (3) (78 S. E. 449, 45 L. R. A. (N. S.) 1173), construing the constitutional inhibition against a municipality incurring a debt without a preliminary vote of the people, this court held that the contract there where the city "pledged its good faith" for the payment of installments over a period of years violated the constitutional provision. With the language of the constitution clear and unambiguous, it is the duty of every one to obey it. It must not be forgotten that the people are the sovereigns, and the State officers are but their agents elected to represent them. The former are the masters; the latter the servants. The sovereign people have seen fit to prohibit the State and its officers from incurring debts, except those defined in the constitution. To allow State officers directly or indirectly to circumvent this constitutional restriction made by the people for their own protection would be to exalt the agent above his principal, the servant above his master; and thus to undermine the foundation upon which free government must rest. This debt limitation was written in the constitution to be obeyed. The courts must uphold it in the spirit in which it was adopted, and no scheme or subterfuge designed to nullify this important constitutional mandate shall receive the approval of the courts.

■ Finally, it is contended that since the act under which the State markets are established provides that fees shall be charged by the markets and used to pay the expenses of establishing and operating them, and since the debt here declared on is for an alleged sale of leases of the land on which the market is situated,

it does not constitute a debt as contemplated by the provision of the constitution above referred to. The strongest decision by this court in favor of this contention is *Miller* v. *Head,* 186 *Ga.* 694 (198 S. E. 680). In that case the court was dealing with a statute and a resolution subjecting the income of waterworks acquired by the county to the payment of the purchase-price or certificates by the sale of which the waterworks were to be established, and expressly providing in the certificates and the law that such certificates were dependent entirely upon such income for their payment. It was held that such certificates did not constitute a debt against the county. Cases of other jurisdictions were cited, to the effect that since only the new revenue derived from the use of the property could be applied to the purchase-price of the property, and no other assets of the county could be used to pay the same, it did not constitute a debt. That case is clearly distinguished on its facts from the instant case. There is no expressed or implied provision, in either the act or the contract with which we are now dealing, whereby only the receipts from the operation of the markets shall be used in paying expenses of establishing and operating them. So far as the act provides, and so far as the alleged contract upon which plaintiff bases his claim provided, any and all funds of the State in the hands of the Commissioner of Agriculture might be used in paying the claim. Therefore there is no merit in this contention; and it must be held that the claim declared on constituted a debt against the State, in violation of the constitution. Roberts is not only not required to pay same, but is positively prohibited from doing so. The petition alleged no cause of action against him.

*Judgment affirmed. All the Justices concur.*