HOULIHAN *et al.*, Commissioners, v. SAUSSY, Ordinary, *et al.*

No. 16738. OCTOBER 10, 1949.

2

*John J. Bouhan,* for plaintiffs.

*Eugene Cook, Attorney-General, Spence M. Grayson, Owen H. Page,* and *Albert L. Cobb,* for defendants.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) It is insisted by counsel for the intervenors that the act of 1949 (Ga. L. 1949, p. 440) is violative of article 3, section 11, paragraph 1, of the Constitution of 1945 (Code, Ann., § 2-2301) which provides that "the General Assembly may, at any time, by a majority vote of both branches prescribe other and different salaries for all of the elective officers provided for in this Constitution, but no such change shall affect the officers then in commission."

Article 11, section 2, paragraph 1, of the Constitution of 1945 (Code, Ann., § 2-7901) declares: "The county officers shall be elected by the qualified voters of their respective counties or districts, and shall hold their office for four years. They shall be removed upon conviction for malpractice in office; and no person shall be eligible for any of the offices referred to in this paragraph unless he shall have been a resident of the county for two years and is a qualified voter." The next paragraph of this section and article refers exclusively to the compensation of county officers, and reads as follows: "County officers may be on a fee basis, salary basis, or fee basis supplemented by salary, in such manner as may be directed by law." Code, Ann., § 2-7902.

In determining the meaning of a provision of the Constitution, due consideration should be given to the intention of its framers. An inspection of volume 2 of the Records of the Constitutional Commission, 1943-1944, pp. 269-271, discloses that the members thereof fully realized the problem that confronted them in providing for the compensation of county officers, due to the fact that many were being forced to resign because of inadequate compensation, while others were being overpaid. The discussion of this problem shows without question that it was the intention of the framers of the Constitution to authorize the fiscal authorities of the respective counties to increase or diminish the salary of all county officers, at any time on the recommendation of two successive grand juries, whenever the circumstances required such change, and to authorize such change without respect to their terms of office. Subsequently the General Assembly amended the provision of the proposed Constitution dealing with salaries of county officers by taking away the power of recommendation from two successive grand juries and placing the same power squarely and exclusively within its control. See Georgia House Journal, Regular Session, 1945, p. 485. It is apparent from the foregoing that the General Assembly, while recognizing the desirability of providing for either increasing or diminishing the salary of county officers without regard to their terms of office, deemed it wise not to subject the compensation of such officers to the recommendation of the grand juries, and instead took upon itself the right to prescribe compensation for county officers when it declared in its recommendation, which was ratified by the people of this State, that "county officers may be on a fee basis, salary basis, or fee basis supplemented by salary, in such manner as may be directed by law." This final provision, as hereinabove indicated, is now contained in article 11, section 2, paragraph 2, of the Constitution of 1945. Code, Ann., § 2-7902. From what has been said it is evident that the General Assembly intended for the compensation of county officers to be fixed from time to time by legislative enactment as circumstances might in its discretion require.

In further illustrating the intention of the framers of the Constitution and of the General Assembly, it is well to note

the provision of the Constitution requiring notice of intention to apply for local legislation. The Constitution of 1877 (Code, § 2-1816) provided that no local or special bill should be passed unless notice of intention to apply therefor, had been published in the locality where the matter or thing to be affected was situated, which notice had to be given at least thirty days prior to the introduction of the bill. That section as amended and as now codified as Code, Ann., § 2-1915, includes the following language: "No office to which a person has been elected shall be abolished, nor the term of the office shortened or lengthened by local or special bill during the term for which such person was elected unless the same be approved by the people of the jurisdiction affected in a referendum on the question." Prior to the amendments to the Constitution adopted in 1945, county officers' salaries were subject to change in the discretion of the General Assembly, and it was clearly the intent of the amendments to the Constitution, adopted in 1945—since they did not require a referendum of the people of the locality to change the compensation of county officers, and because the amendment of 1945 stated that the compensation of county officers may be fixed as may be directed by law—that the compensation of county officers would be left solely to the discretion of legislative control and enactment without restriction, except that they would be placed on a fee basis, salary basis, or fee basis supplemented by salary as in the discretion of the General Assembly was deemed proper. Along this line of thought it was said in *Collins* v. *Russell*, 107 *Ga.* 423, 426 (33 S. E. 444): "There can be no question about the proposition that the legislative power of the State is absolute with respect to all offices that it creates, where no constitutional restriction is placed upon its power with reference to such offices. The incumbent of such an office does not hold the same by virtue of any sort of contract, express or implied, with the State or its lawmaking power, which gives him a vested right in the office. He accepts the office subject to the control of it by any legislative action in reference thereto which might thereafter be taken. The legislature may abolish the office before his term expires, may modify its duties, may shorten or lengthen the term, and increase or diminish the salary or change the mode of compensation." The foregoing

decision was cited with approval in *National Surety ᴄᴏrp.* v. *Gatlin,* 192 *Ga.* 293 (15 S. E. 2d, 180). Since the rendition of the opinion in *Collins* v. *Russell,* 107 *Ga.* 423 (supra), the only constitutional change which would render a portion of the opinion inapplicable would be the provision hereinbefore quoted which prohibits the legislature from abolishing the office or from shortening or lengthening the term without a referendum of the people. In so far as compensation is concerned, the legislature, under that opinion and under the existing law, still has the power to either increase or diminish the salary or change the mode of compensation, because the legislature under the constitutional amendment of 1945 retains the power and control over the compensation of county officers which it always held exclusively and has never surrendered.

In order for an officer to be termed and classified a county officer in compliance with article 11, section 2, paragraph 1, of the Constitution (Code, Ann., § 2-7901), he must be: (1) elected by the qualified voters of the county; (2) hold office for four years; (3) be a resident of the county for two years; and (4) be a qualified voter. As such county officer, he is clearly not an executive officer of the State as specifically named in the Constitution (Code, Ann., § 2-3101). While county officers have been referred to as constitutional officers (*Graham* v. *Merritt,* 165 *Ga.* 489, 141 S. E. 298; *McGill* v. *Simmons,* 172 *Ga.* 127, 157 S. E. 273), nevertheless, they are not "elective officers" within the meaning of the Constitution of 1945 (Code, Ann., § 2-2301), wherein it is declared that no change in salary "shall affect the officers then in commission." This is true for the reason that the Constitution merely prescribes the manner of election of county officers and the term of office, and then requires that the county offices shall be uniform in name throughout the State. The compensation of county officers is not provided for in the Constitution, and the State makes no contribution thereto. The county officers here involved are paid solely and exclusively from funds out of the treasury of the county.

Article 6, section 13, paragraph 2, of the Constitution of 1877 (Code, § 2-4002) provides in part: "The General Assembly may, at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers

6

[which included judges of the superior courts], but no such change shall affect the officers then in commission." In construing this language, it was said in the case of *Thomas* v. *Mac-Neill*, 200 *Ga.* 418, 426 (37 S. E. 2d, 705): "The salaries of judges of the superior courts payable out of the treasury of the State were clearly protected from change as to judges then in commission. We think that an entirely different situation prevails under the constitutional provisions in so far as the supplemental sums payable from the county treasury were involved. Reading together paragraphs 1 and 2 of section 13 of article 6 of the Constitution of Georgia as they existed at the time of the present case, we think that the prohibition contained in paragraph 2, that no change should affect the judges of the superior court then in commission, related only to salaries paid to judges of the superior courts out of the treasury of the State, and that the Board of Commissioners of Fulton County had the power and authority to change or decrease the supplemental sums payable out of the county treasury to the judges of the superior court, although the change or decrease occurred during the term and after a higher compensation from the county had been authorized."

Counsel for the intervenors state in their brief that, whether or not the court shall concur with the view that the clerk of the superior court, the sheriff of the county, the tax collector and tax receiver, are "elective officers provided for in this Constitution," as contemplated by Code, Ann., § 2-2301, there can be no doubt that the ordinary is such a constitutional officer. Although the Constitution of 1945 provides for the establishment of courts of ordinary (Code, Ann., § 2-3601), and prescribes their powers and term of office (§§ 2-4101—4103), the Constitution does not fix their salary, which, as heretofore indicated, is paid in the present case out of the county treasury.

Accordingly, the act of 1949 (Ga. L. 1949, p. 440) is not violative of article 3, section 11, paragraph 1 of the Constitution of 1945.

The above ruling is in accord with the decision in *Houlihan* v. *Atkinson*, 205 *Ga.* 720, 725 (55 S. E. 2d, 233), where it was said in the first division of the opinion: "That this is a proper construction of article 3, section 11, paragraph 1 of the Consti-

tution of 1945 is even more clearly apparent because of the difference between the old and the new constitutional provisions. In the first place, this limitation upon the right of the General Assembly to change salaries was taken out of its setting as a part of the article of the Constitution dealing with judicial officers, the Attorney-General and the solicitors-general only, and placed at the end of article 3 of the Constitution of 1945 dealing with the legislative branch of the government, and instead of it applying only to the salaries of the officers above named, it is made to apply to 'all of the elective officers provided for in this Constitution.' None of the other elective officers provided for in this Constitution have their salaries supplemented from county funds as court expense, but their salaries are either fixed or prescribed by the Constitution or by the General Assembly, and are paid out of the treasury of the State. By thus enlarging the scope of the application of this provision of the former Constitution dealing with the judiciary, and making it apply to all of the elective officers provided for in the Constitution, it is manifest that it was intended to apply only to those salaries paid from the State treasury, and this provision of the Constitution has no application to supplemental salaries paid judges and solicitors-general from county funds."

Another insistence of the intervenors is that the act of 1949, supra, is violative of article 1, section 4, paragraph 1, of the Constitution of 1945 (Code, Ann., § 2-401), which forbids the passage of a special law in any case for which provision has been made by an existing general law, in that the act of 1949 is in conflict with described acts, each of which is alleged to be a general law.

It is manifest from the foregoing rulings that the new provision, "county officers may be on a fee basis, salary basis, or fee basis supplemented by salary, in such manner as may be directed by law," which was not contained in the Constitution of 1877, could have no other purpose than to modify the requirement as to the uniformity of laws to the extent of allowing the General Assembly to fix different salaries for officers in the respective counties of this State. It follows that the trial court did not err for any reason assigned in holding that the

act of 1949 was a valid statute, and in directing the commissioners to pay the defendants' salaries in accordance with the terms of said act.

*Judgment affirmed. All the Justices concur.*