18284. McLUCAS *v.* STATE BRIDGE BUILDING
AUTHORITY *et al.*

ARGUED JULY 14, 1953—DECIDED SEPTEMBER 14, 1953.

*A. C. Latimer*, for plaintiff in error.

*Paul Webb, Solicitor-General, Eugene Cook, Attorney-General, C. Winton Adams, Assistant Attorney-General, Carlton Mobley, B. D. Murphy*, contra.

CANDLER, Justice. The State Bridge Building Authority, a body corporate and politic, was created by an act of the legislature which the Governor approved on March 25, 1953. Ga. L. 1953, p. 626. By the creating act, it was given perpetual corporate existence and was deemed thereby to be an instrumentality of the State and a public corporation. An acute need for additional bridges and a desire to replace many substandard bridges, the construction and replacement of which as a part of the State's highway system which the State was unable to finance without creating a State debt, was the motivating influence prompting passage and approval of the act. Among many

others, and in addition to usual corporate powers, the Authority was expressly authorized and empowered by the act, at one time, or from time to time, to provide by resolution for the issuance of negotiable revenue bonds in a sum not to exceed $30,000,000 outstanding at any one time; to sell its bonds and use the proceeds for the purpose of paying all or any part of the cost of any project or combination of projects, the financing and construction of which the State Highway Board for the benefit of the State Highway Department had proposed and requested; to lease or rent its facilities to the State Highway Department for a period not exceeding 50 years from the date of the lease contract; and to pledge the revenue derived therefrom to the payment of its revenue bonds. And the State Highway Board for and on behalf of the State Highway Department, by the bridge-building act and by the terms of an amendment, which the legislature passed in 1953 (Ga. L. 1953, p. 81), to the State Highway Board Act of 1950, as amended by the act of 1951, was fully authorized to contract with the Authority for the use of its facilities. It authorizes and empowers the State Highway Board for the benefit of the State Highway Department to request the Authority to consider the financing and construction of any project or projects which may be desirable in the opinion of the Board; and for the purpose of making consideration of a project possible, it authorizes the Board to expend available highway funds. The act also declares that all revenue bonds issued under the provisions thereof shall have all the qualities and incidents of negotiable instruments under the Negotiable Instruments Law of Georgia, and that such bonds and the income therefrom shall be exempt from all taxation within the State. And section 30 of the act provides: "It is hereby found, determined and declared that the creation of the Authority and the carrying out of its corporate purposes is in all respects for the benefit of the people of this State, and that the Authority is an institution of purely public charity and will be performing an essential governmental function in the exercise of the power conferred upon it by this Act and this State covenants with the holders of the bonds that the Authority shall be required to pay no taxes or assessments upon any of the property acquired or leased by it under its jurisdiction, control, possession or supervision or upon its activities in the operation or

maintenance of the projects erected by it or any fees, rental or other charges for the use of such projects or other income received by the Authority and that the bonds of the Authority, their transfer, and the income therefrom shall at all times be exempt from taxation from within the State." The act also declares that the bonds of the Authority shall not be deemed to constitute a debt of the State or a pledge of the credit of the State; that they shall not directly, indirectly, or contingently obligate the State to levy or pledge any form of taxation whatsoever therefor or to make any appropriation for their payment; and that they must contain recitals on their face covering substantially the foregoing provisions. And section 26 of the act expressly provides that the bonds of the Authority, both as to principal and interest, shall be paid solely from revenue received by it as rentals for the use of its facilities. The act also provides that the bonds of the Authority shall be confirmed and validated in accordance with the procedure of the Code of Georgia, Ch. 87-8, by an action brought therefor in the Superior Court of Fulton County, Georgia; and that in and as an integral, but independent, part of the bond-validation proceedings, or separately, the Authority has and is expressly given the right to and privilege of a simultaneous or separate action, suit, countersuit, or equitable bill against the State and the State Highway Board and the State Highway Department for a declaratory adjudication of the validity and binding effect of any lease contract or contracts whose rental income may be pledged or partially pledged to the benefit of any bonds being validated.

The State Highway Board for the benefit of the State Highway Department requested the Authority to consider the financing and construction of a project consisting of approach spans to a named bridge and a number of bridges in several different counties of the State, and acceding thereto and pursuant to the provisions of the act, the Authority did on April 10, 1953, by resolution, provide for the issuance and sale of $9,750,000, in principal amount, of its bridge-building bonds for the purpose of financing the project so designated. Pursuant to resolutions regularly adopted and pursuant also to the provisions of the act, the Authority entered into an agreement with the State Highway Department whereby the former agreed to and did lease to the latter

for a term of 50 years, beginning as of July 1, 1953, and ending June 30, 2003, the facilities of the designated project, or the approach spans and those bridges which the Authority had on April 10, 1953, agreed to construct and finance, for the sum of $831,000 per annum, and in addition thereto such other rental charges as are provided for by section 11 of the act, but all payable only out of the current revenues of the lessee, and such lease, or rental contract was made and entered into between the parties after the Authority, as it was required to do by section 8 of the bridge-building act, had first secured a certificate from the State Auditor that the annual rental obligations under the aforesaid lease or rental contract fall within the existing fiscal power of the State Highway Department to make such obligations pursuant to section 12 of the State Highway Board Act of 1950, as amended by the acts of 1951 and 1953. By resolution duly adopted, the Authority provided for the execution of a trust indenture with The Citizens & Southern National Bank of Atlanta as trustee, securing the issue of the aforesaid bonds, as it was by section 24 of the bridge-building act authorized to do, and such an instrument was thereafter duly executed.

To a petition by Paul Webb, Solicitor-General of the Atlanta Judicial Circuit, in behalf of the State of Georgia against the State Bridge Building Authority, the State Highway Department, and the State Highway Board, seeking to validate $9,750,-000 in principal amount of negotiable revenue bonds which the State Bridge Building Authority provided for on April 10, 1953, for the purpose of constructing and financing a project designated by the State Highway Board as a part of the State's highway system, all of the defendants filed answers admitting as true the material allegations of the petition and prayed for a judgment validating the bonds so issued. Further answering, and by way of countersuit for declaratory relief against the State of Georgia, the State Highway Department, and the State Highway Board, the State Bridge Building Authority alleged that it entered into a lease contract on April 10, 1953, with the State Highway Department under the terms of which it rented to the lessee for a term of 50 years, beginning as of July 1, 1953, the rights of way and bridges to be constructed thereon as are specified in the validation petition and the exhibits thereto attached.

The countersuit contained a prayer that the lease contract be declared good and sufficient and a valid and binding obligation of the State Highway Department. The State of Georgia responded and by its response thereto admitted the facts alleged, conceded validity of the lease contract, and stated that it should, as an obligation of the parties thereto, be declared valid and binding, and in every respect legal.

John D. McLucas, as a citizen and taxpayer of Fulton County, Georgia, presented and had allowed by order of the court his intervention objecting to the validation of the bonds and to a judgment declaring the lease contract valid and binding. His intervention alleges that the bridge-building act of 1953 violates several stated provisions of the Constitution of 1945 and is for that reason null and void; and that the lease contract between the State Highway Department and the State Bridge Building Authority is illegal and unenforceable for reasons which will be pointed out and dealt with in the opinion. After a hearing, the act was declared constitutional and the lease was adjudged to be valid and enforceable over all attacks made by the intervenor upon the respective constitutionality and validity of each. The exception is to that judgment.

1. The Constitution of this State provides: "No debt shall be created by or on behalf of the State, except to supply such temporary deficit as may exist in the treasury in any year from necessary delay in collecting the taxes of that year, to repel invasion, suppress insurrection, and defend the State in time of war, or to pay the existing public debt; but the debt created to supply deficiencies in revenue shall not exceed, in the aggregate, five hundred thousand dollars, and any loan made for this purpose shall be repaid out of the taxes levied for the year in which the loan is made." Code (Ann.) § 2-5601. The Constitution also declares that "The bonded debt of the State shall never be increased, except to repel invasion, suppress insurrection, or defend the State in time of war." Code (Ann.) § 2-5602. And it also declares that "The credit of the State shall not be pledged or loaned to any individual, company, corporation or association and the State shall not become a joint owner or stockholder in or with, any individual, company, association or corporation." Code (Ann.) § 2-5604. The intervenor contends that the State

bridge-building act of March 25, 1953, is unconstitutional, null and void, because the revenue bonds which the State Bridge Building Authority is authorized and empowered to provide for and issue under section 14 of the act are obligations or debts of the State, inhibited by the quoted provisions of the Constitution. To this we do not agree. While the Authority is an instrumentality of the State, it is nevertheless not the State, nor a part of the State, nor an agency of the State. It is a mere creature of the State, having distinct corporate entity. Its revenue bonds, as section 23 of the act expressly and emphatically declares, are not obligations or debts of the State, nor a pledge of the credit of the State, but they are payable solely and exclusively from revenue derived from a use of its facilities; and the State is not directly, indirectly, or contingently obligated to levy or pledge any form of taxation whatsoever therefor or to make any appropriation for the payment of them, and the act requires that the bonds, when issued, must contain recitals on their face to this effect. They are first, last, and always a corporate debt of the Authority and in no sense a debt of the State. In this connection and to the same effect, see *State* v. *Regents of the University System,* 179 *Ga.* 210 (175 S. E. 567), and *Sheffield* v. *State School Building Authority,* 208 *Ga.* 575 (68 S. E. 2d 590). Every argument used by this court in those cases to sustain the rulings there made supports the legislation here involved. The ground was thoroughly plowed in those cases, and it would serve no useful purpose to go over it again. A logical and reasonable application of the principle there ruled requires a ruling here that the bridge-building act insofar as it authorizes the issuance of negotiable revenue bonds does not offend the constitutional provisions above referred to. And *State Ports Authority* v. *Arnall,* 201 *Ga.* 713 (41 S. E. 2d 246), does not require a different ruling, there being a factual difference.

(a) Nor is there any merit in the contention that the bonds which may be issued under and pursuant to the bridge-building act create an obligation against the State in violation of the provisions of article VII, section III, paragraph V of the Constitution of this State (Code, Ann., § 2-5605), which declares that the State shall not assume the debt, nor any part thereof, of any county, municipal corporation, or political subdivision of the State, un-

less such debt be contracted to enable the State to repel invasion, suppress insurrection, or defend itself in time of war.

2. It is insisted by the intervenor that the bridge-building act of 1953 and the lease made pursuant thereto provide for the creation of a debt against the State in violation of article VII, section III, paragraph I of the Constitution of 1945 (Code, Ann., § 2-5601). In support of this contention, counsel for the plaintiff in error cite and rely on *Barwick* v. *Roberts*, 188 *Ga.* 655 (4 S. E. 2d 664), which this court decided on September 14, 1939; and had the instant case reached us while the Constitution of 1877 was of force and effect, that case would have been controlling and binding on us and we would have been required to hold, as we did there, that the act and the lease here involved offend the aforesaid debt provision of the Constitution. But since Barwick's case was decided, the people of this State have adopted the Constitution of 1945, and article VII, section VI, paragraph I(a) (Code, Ann., § 2-5901) of the new Constitution provides: "The State, state institutions, any city, town, municipality or county of this State may contract for any period not exceeding fifty years, with each other or with any public agency, public corporation or authority now or hereafter created for the use by such subdivision or the residents thereof of any facilities or services of the State, state institutions, any city, town, municipality, county, public agency, public corporation or authority, provided such contracts shall deal with such activities and transactions as such subdivisions are by law authorized to undertake." By these quoted words, and in addition to other contracts which may be constitutionally made pursuant thereto, the people authorized the State and State institutions—which includes, of course, the State Highway Department—to contract for a period not exceeding fifty years with an Authority then or thereafter created for the use of its facilities or services, but the power so to contract was limited by the people to such activities and transactions as the State or a State institution is by law authorized to undertake. And the power so to contract for the use of such facilities or services as thus conferred carries with it, by necessary implication, authority from the people to pay for the use of such facilities or services during the contract period. Story on the Constitution, § 428; 1 Cooley on Constitutional Limitations

8

(8th ed.) p. 218; 11 Am. Jur. 699, § 58; 16 C.J.S. 143, § 70; Fraser *v.* Brown, 203 N. Y. 136 (96 N. E. 365, 367); Marshall *v.* Gordon, 243 U. S. 521 (37 Sup. Ct. 448, 61 L. ed. 881, 885). Whatever is necessary to render effective any provision of a constitution, whether it is a grant, restriction, or prohibition, "must be deemed implied and intended in the provision itself." Black's Constitutional Law, 78. Article VII, section III, paragraph I and article VII, section VI, paragraph I(a) were each in the Constitution of 1945 when it was adopted by the people. They deal with the same subject matter, namely, "Finance, Taxation & Public Debt." They are of equal dignity and to give full force and effect to the will of the people, as thus expressed, they must be construed together, being as they are in pari materia. · The latter lifts out of the former any inhibition against the creation of a debt insofar as the creation of a debt is authorized by the latter clause. Any other construction would render one of them meaningless and we will not ascribe to the people an intention to adopt a constitution containing inconsistent provisions. In this connection, see *Park* v. *Candler,* 114 *Ga.* 466 (3) (40 S. E. 523); *Epping* v. *City of Columbus,* 117 *Ga.* 263 (43 S. E. 803); *Hooper* v. *Almand,* 196 *Ga.* 52 (25 S. E. 2d 778); *Wheeler* v. *Board of Trustees of Fargo Consol. School District,* 200 *Ga.* 323 (37 S. E. 2d 322); *Houlihan* v. *Saussy,* 206 *Ga.* 1 (55 S. E. 2d 557). Accordingly, we hold· that neither the State Bridge Building Authority Act nor the lease contract which the State Highway Department made with the State Bridge Building Authority under and pursuant to the act for the use of its facilities or services violates the debt restriction and limitation provision of the Constitution. On their face they do not run counter to the Constitution of 1945; and we will not attribute to the lawmakers of the State a purpose to circumvent the provisions of that instrument.

3. Section 30 of the State Bridge Building Authority Act expressly exempts the property of the Authority, its revenue bonds, and the income therefrom from all taxation within the State, and it is insisted that this exemption constitutes a donation or a gratuity in violation of article VII, section I, paragraph II of the Constitution (Code, Ann., § 2-5402); and that it·offends article VII, section I, paragraph IV of the Constitution (Code,

Ann., § 2-5404), which declares that all laws exempting property from taxation other than the property therein enumerated are void. Among the properties enumerated by the clause of the Constitution last cited which the legislature is authorized to exempt from taxation are "all public properties" and "all institutions of purely public charity." The property of the State Bridge Building Authority is not public property (*Williamson* v. *Housing Authority of Augusta*, 186 *Ga.* 673, 689, 199 S. E. 43); but, in view of the beneficent purpose for which it was created by the legislature, coupled with the fact that it has no shareholders or other owners of any character to which its corporate profit or income is distributable, we think that it is an institution of purely public charity. In this connection see *Houston* v. *Mills Memorial Home*, 202 *Ga.* 540, 544 (43 S. E. 2d 680); *Elder* v. *Henrietta Egleston Hospital*, 205 *Ga.* 489 (53 S. E. 2d 751). "As used in [tax] statutes, the term 'charity' may include substantially any scheme or effort to better the condition of society or any considerable part thereof. However, an enterprise organized for profit cannot secure exemption from taxation as a charitable institution merely because, as an incident to its operation, it administers charity. To come within a provision for the exemption of property used exclusively for charitable purposes, an organization must have charity as its primary, if not sole, object. It is not sufficient that the institution shall have originated in a charitable gift or bequest, but it must actually dispense charity. The test of whether property is within an exemption from taxation of institutions of purely public charity is whether the property itself is dedicated to charity and used exclusively as an institution of purely public charity, and not whether the organization owning it is one of purely public charity. It is not material, however, for the purpose of determining the public nature of a charity, through what particular forms the charity may be administered. If it is established and maintained for the use and benefit of the public, and so conducted that the public can make available use of it, that is all that is required to bring it within the meaning of a statute exempting from taxation institutions of purely public charity." 51 Am. Jur. 584, § 601. The bridges and the approaches thereto, for the construction of which the act under attack provides, are to be used by the public, as a

part of the State's highway system, toll free, and in principle, as they relate to the question being considered, the rulings in *Williamson* v. *Housing Authority of Augusta* and *Sheffield* v. *State School Building Authority*, supra, are in point; and on authority of those decisions, we hold that the exemption here is valid, and that the properties of the Authority are devoted exclusively to public charity as contemplated by the Constitution. Hence, there is no merit in the contention that the bridge-building act, and particularly section 30 thereof, is unconstitutional and void for the reason here assigned.

4. Section 6 of the bridge-building act is as follows: "It is found, determined, and declared that the welfare of the State of Georgia will be served by the creation and operation of this Authority, and that, to the end of accomplishing the purposes of the Authority, the power and authorization to convey for and on behalf of the State so much of the State's highway rights of way as shall be necessary to the accomplishment of the purposes of this Act, is hereby, by authority of the sovereign legislature of the State, delegated to the State Highway Board. Upon the exercise of this power and authority by the State Highway Board, the Governor of the State is requested to execute such conveyances as may be made under this authority upon receipt of such nominal consideration as a committee composed of the Governor, the Attorney-General, and the State Auditor shall determine to be meet and proper for each such individual conveyance." This section of the act is attacked upon the ground that it violates article VII, section I, paragraph II(1) of the Constitution (Code, Ann., § 2-5402), which declares that "The General Assembly shall not by vote, resolution or order, grant any donation or gratuity in favor of any person, corporation or association." This contention is without merit. Each such conveyance is for a nominal consideration, which the Governor, the Attorney-General, and the State Auditor must determine and fix. It is made in furtherance of a legislative plan or scheme having for its only purpose the construction of necessary bridges and approaches thereto which the public will use, toll free, as a part of the State's system of highways. The conveyed property, together with those valuable bridge improvements which the grantee will erect thereon, will, when such improvements are paid for by

the grantee, be returned to the State, without charge therefor, and will thereafter be used by the State as a part of its system of highways. It is a conveyance of property in aid of a public purpose from which great benefit to the State and its citizens is reasonably expected; and, in Georgia *v.* Cincinnati Southern Railway, 248 U. S. 26 (39 Sup. Ct. 14, 63 L. ed. 104), the Supreme Court of the United States—while dealing directly with this particular provision of our Constitution, in a case where the legislature had granted certain public property for railroad right-of-way uses and where the State sought to revoke the grant on the ground that it had been made in violation of the aforesaid inhibiting clause of the Constitution—speaking through Mr. Justice Holmes, said: "Elaborate discussion of the circumstances seems to us superfluous. But it is necessary to mention the objection that by the constitution of Georgia the general assembly was forbidden to 'grant any donation or gratuity in favor of any person, corporation, or association,' and that there was no consideration for this grant. Even if the contemplated and invited change of position on the part of the Cincinnati Southern Railway and the benefit to the State expressly contemplated as ensuing from it were not the conventional inducement of the grant, and so, were not technically a consideration, we are of the opinion that the grant was not a gratuity within the meaning of the state constitution. A conveyance in aid of a public purpose from which great benefits are expected is not within the class of evils that the constitution intended to prevent and in our opinion is not within the meaning of the word as it naturally would be understood. We deem further argument unnecessary to establish that the State of Georgia made a grant which it cannot now revoke."

(a) There is also no merit in the contention that confirmation and validation of the revenue bonds should be denied and refused since the State has only an easement for highway purposes in its rights of way, and a conveyance of them, as provided for by section 6 of the act, will amount in law to an abandonment of them for highway purposes and thus work a reversion. The act contemplates, has for its purpose, and expressly provides for a continued use of the rights of way for highway purposes only, for the improved use of them as a part of the State's permanent system of highways.

5. There is no merit in the contention that the bridge-building act, and particularly those sections thereof which authorize and empower the State Highway Department to pay monthly or yearly rent to the State Bridge Building Authority for the use of its facilities or services, violate article VII, section II, paragraph I, of the Constitution of 1945 (Code, Ann., § 2-5501), which provides that "The powers of taxation over the whole State shall be exercised by the General Assembly for the following purposes only: . . . 6. To construct and maintain . . . a system of State highways." It is insisted and argued that the legislature was without constitutional authority to authorize and empower the State Highway Department to expend tax funds appropriated to it for any purpose other than for the construction and maintenance of a system of State owned highways, it being specifically alleged by the intervenor "that tax moneys received by the State Highway Department and paid as rentals to the State Bridge Building Authority will not be used to construct and maintain a system of State highways within the meaning of the foregoing constitutional provision for the reason that the bridges to be built will not be owned by the State of Georgia, but will be owned by a separate corporation created by an act of the legislature, to wit, the State Bridge Building Authority." This contention completely overlooks and gives no effect to article VII, section VI, paragraph I(a) of the Constitution (Code, Ann., § 2-5901), which authorizes and empowers the State Highway Department, a State institution, to rent bridge facilities from the State Bridge Building Authority for the State's use as a part of its system of highways; and, as we have previously pointed out, these two original provisions of the Constitution are equal in degree, in pari materia, and must be construed together. And when so construed, ample authority is found in the Constitution for those provisions of the bridge-building act which authorize the State Highway Department to expend appropriated tax funds for the purpose of renting bridge facilities from the Authority for State highway uses. A different ruling is not required by an amendment to article VII, section IX, paragraph IV, of the Constitution of 1945 (Senate Resolution No. 5; Ga. L. 1951, p. 849), which the people adopted in 1952, and which requires the General Assembly in each general appropriation act to ap-

propriate to the State Highway Department, for highway purposes, an amount not less than the total motor fuel and motor vehicle license taxes received by the State Treasurer for the immediately preceding fiscal year, less the amount of refunds, rebates, and collection costs authorized by law. The amendment provides: "Said funds are hereby allocated to the Highway Department and shall be utilized for highway improvement including construction and maintenance." The 1952 amendment, neither expressly nor by necessary implication, divests the State Highway Department of the power conferred by article VII, section VI, paragraph I(a) to contract for the use of bridge facilities from the State Bridge Building Authority for highway purposes, and to pay annual or monthly rentals for the use of them during the contract period. Different provisions of the Constitution should be harmonized, if practicable (*Hammond* v. *Clark,* 136 *Ga.* 313 (10 a), 71 S. E. 479, 38 L.R.A. (N. S.) 77), and repeals of constitutional provisions by implication are not favored by law. An amendment to a constitution repeals by implication existing constitutional provisions only when they are in irreconcilable conflict, and when they cannot reasonably stand together. *Stewart* v. *Bacon County,* 148 *Ga.* 105 (95 S. E. 983); *Clements* v. *Powell,* 155 *Ga.* 278 (116 S. E. 624); *DeJarnette* v. *Hospital Authority of Albany,* 195 *Ga.* 189, 204 (23 S. E. 2d 716); 16 C.J.S. 90, § 92.

6. There is manifestly no merit in the contention that the bridge-building act is unconstitutional, and therefore null and void, because it offends article III, section VII, paragraph X of the Constitution (Code, Ann., § 2-1910), which provides: "All bills for raising revenue, or appropriating money, shall originate in the House of Representatives, but the Senate may propose, or concur in amendments, as in other bills." The act is not a revenue measure nor one appropriating money.

7. Article III, section VII, paragraph XVII of the Constitution (Code, Ann., § 2-1917) provides: "The General Assembly shall have no power to grant corporate powers and privileges to private companies, to make or change election precincts, nor to establish bridges or ferries, nor to change names of legitimate children; but it shall prescribe by law the manner in which such powers shall be exercised by the courts; it may confer this au-

thority to grant corporate powers and privileges to private companies to the judges of the superior courts of this State in vacation." It is alleged in paragraph 8 of the intervention that the bridge-building act offends the quoted provision of the Constitution because it does in fact grant a corporate charter, powers, and privileges to the State Bridge Building Authority, which is, in purpose and effect, a private corporation, and provides for the establishment of bridges within the meaning of the aforesaid constitutional prohibition. There is obviously no merit in this contention; and this is true because the State Bridge Building Authority is an instrumentality of the State and a public corporation, created as such by the General Assembly with corporate power to finance and construct such bridge projects as the State Highway Board for the benefit of the State Highway Department may request. *State* v. *Regents of University System of Georgia*, supra.

8. Section 12 of the State Highway Board Act of 1950, as amended by the act of 1951 and by the act of 1953 (Ga. L. 1953, p. 81) declares in part as follows: "The State Highway Board in the administration of the State Highway Department is hereby expressly prohibited from making or contracting any debts or entering into any contract, for which it does [not] have funds on hand to pay at the time of making said debt or entering said contract; except that the State Highway Board in the administration of the State Highway Department is hereby expressly authorized to enter into lease contracts with the State Bridge Building Authority, and may obligate the Department to pay lease rentals for the use of projects according to the provisions of the 'State Bridge Building Authority Act,' provided that the total of such lease rentals contracted to be paid at any time shall never exceed $2,500,000 per annum. For the purpose of paying said lease rentals such funds as may be received by the State Highway Department for the cost of maintaining, improving and reconstructing the roads and bridges on the State highway system and the cost incident thereto, may be pledged by the State Highway Board in the administration of the State Highway Department for the payment of such lease rentals." Paragraph 9(c) of the intervention alleges that the lease involved is invalid and of no effect because it violates the provisions of the quoted

section, since the annual rental provided for in the lease is not fixed and definite, and may exceed $2,500,000 per annum. There is no merit in this contention. The lease expressly recites: "Provided, however, that the aggregate annual rental due by lessee under this lease and all other lease contracts entered upon between lessor and lessee under authority of said Act of March 25, 1953, shall not exceed the maximum permitted by Section 12 of the Highway Board Act as amended by the Act of February 17, 1953 (Ga. L. 1953, p. 81)." And, pursuant to the requirement of section 8 of the bridge-building act, the State Auditor, under the provisions of section 12 of the State Highway Board Act of 1950, as amended, has, as the record shows, certified in writing that the annual rental obligations under the lease fall within the existing fiscal power of the State Highway Department.

9. Section 3 of the bridge-building act reads in part: "As used in this Act, the following words and terms shall have the following meanings: . . . (b) The word 'project' shall be deemed to mean and include one or more bridges . . . together with the approaches . . . thereto. . . (d) The word 'approach' shall be deemed to mean not more than three miles of the traffic artery on either end of the bridge and within the limit shall mean so much of the traffic arteries on either end of the bridge as shall be required to develop the maximum traffic capacity of the bridge, including necessary grading, paving, minor drainage structure and other construction necessary to the approach." The State Highway Board approved and requested the Authority to finance and construct a project including: "8. North approach spans of the bridge over Ocmulgee River, State Route 27, in Telfair County at Lumber City." Further described as "Being a strip of land [in Telfair County, Georgia] 100 feet in width, . . . and having a length of 1280 feet beginning at Station 27/00 and ending at the Ocmulgee River edge, Station 39/80." In paragraph 13 of the intervention it is alleged "that the structure thus proposed to be constructed is not a bridge within the meaning of said act of March 25, 1953, but is, in fact, an approach to a bridge already constructed, and the State Bridge Building Authority is not authorized by said act to construct such an approach, and the State Highway Board and the Governor are not authorized by said act to convey property to the

State Bridge Building Authority for such a purpose, and the State Bridge Building Authority is not authorized to issue revenue bonds for the purpose of obtaining funds to finance construction of such approach." This contention is wholly without merit. As authorized by section 4(5) of the bridge-building act, the Authority may finance and construct an approach, as that word is defined by the act, either to an old or to a new bridge when requested to do so by the State Highway Board.

10. The act is not invalid for any reason assigned. The revenue bonds, the lease, and the trust indenture between the State Bridge Building Authority and The Citizens & Southern National Bank, as the facts indisputably show, completely conform thereto; hence the court did not err, as contended, in confirming and validating the revenue bonds and in holding that the lease and the trust indenture are valid and binding. Accordingly, the judgment complained of is not erroneous for any reason assigned.

*Judgment affirmed. All the Justices concur. Duckworth, C.J., and Head, J., concur in the judgment, but not in all that is said in the opinion. Wyatt, J., concurs specially.*

WYATT, Justice, concurring specially. I agree to so much of this opinion as deals with tax exemptions for the sole reason that I am bound by former decisions of this court.