Joseph S. Mattina, J.
A CPLR article 78 proceeding was brought before this court to enjoin the respondent election commissioners from accepting applications for registration and enrollment by mail from residents of the City of Buffalo unless proof is shown that they qualify pursuant to specific exceptions as defined in the Constitution of the State of New York. The basis for the relief sought is that section 5 of article II of the Constitution of the State of New York is violated by section 153 of the Election Law (as added by L 1975, ch 166, eff Dec. 1, 1975).
Although there is some authority for the proposition that mandamus will lie to direct the nonenforcement of a law if found to be unconstitutional, it is the opinion of this court that the better mechanism to bring this matter before a tribunal is by way of a preliminary injunction in an action for declaratory judgment.
Article 78 proceedings are available to determine the validity of administrative acts, under a valid statute, by means of mandamus to enforce a clear legal right in a situation where a public official has failed to perform or refused to perform a duty mandated by law. Declaratory judgments are available against a legislative body to determine the validity of its acts. Essentially the distinction between a declaratory judgment and an article 78 proceeding is that in a declaratory judgment you test the basic scope and validity of a statute pursuant to *29 which officials are acting whereas in an article 78 proceeding you deal with actions brought to have officials take legally mandated administrative action.
Consistent with this approach, the court in Matter of Levin v Haber (28 Misc 2d 529, 531-532) denied relief in the nature of mandamus where it attacked the constitutionality of a statute stating: "Mandamus has not lost its historical function by being taken into article 78 of the Civil Practice Act. It may not be used as a substitute for an injunction in a plenary suit to prevent violation of a law, as was pointed out in Matter of Donegan v. Patterson (4 Misc 2d 81). Neither may it be used to direct nonenforcement of a law said to be unconstitutional.”
The Court of Appeals very clearly reviewed the entire issue in Kovarsky v Housing & Development Admin., City of N. Y. (31 NY2d 184, 191) when Judge Jasen, speaking for a unanimous court stated: "While an article 78 proceeding is generally the proper vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner * * * the rule is different when the issue is the constitutionality of legislative action. We have consistently held that a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments.” The court went on to say (p 192): "This does not mean, however, that the issue is not cognizable in the instant proceeding. Rather, since it is not questioned that all necessary parties are before the court, Special Term, pursuant to CPLR 103 (subd. [c]) should have treated the instant proceeding as an action for a declaratory judgment seeking to test the constitutionality of the afore-mentioned section of RSL, and proceeded accordingly.”
The instant situation is analogous to the Kovarsky case in that the court has obtained jurisdiction over the parties, that it is a civil judicial proceeding and shall not be dismissed solely because it is not brought in the proper form. Exercising the afore-mentioned authority granted to this court under CPLR 103 (subd [c]), the article 78 proceeding is converted into an action for declaratory judgment to determine the constitutionality of section 153 of the Election Law.
There was no request for a preliminary injunction since the parties stipulated to set aside and hold separately any mail voter registrations received pending the determination of this proceeding.
Therefore the sole issue before the court is the constitution *30 ality of section 153 of the Election Law in light of the language in section 5 of article II of the New York State Constitution.
Section 153 of the Election Law provides for a plan of registration of voters by mail.
However section 5 of article II of the New York State Constitution very specifically states: "In cities and villages having five thousand inhabitants or more, voters shall be registered upon personal application only; but voters not residing in such cities or villages shall not be required to apply in person for registration” (emphasis added). Additional provisions are set forth whereby voters who are in the military service of the State or of the United States, inmates of a veterans’ hospital, and voters who are unable to appear personally for registration due to illness or because their occupation requires them to be in a county outside such city shall not be required to register personally.
The problem of voter registration is not something new, and has been the source of debate for over 109 years.
In order to understand this problem more fully, the court must go back and review the history of section 5 of article II over this period of time.
The controversy started back in 1821 when the first provision in the Constitution dealing with registration was adopted stating in 22 words that: "Laws shall be made for ascertaining by proper proofs, the citizens who shall be entitled to the right of suffrage, hereby established.” This provision still appears as part of the first sentence of section 5 of article II.
Since that time the original 22 words have been joined by 194 more, some of the most significant developments being:
(1) The adoption by the Constitutional Convention of 1867 of the first uniform system of registration throughout the State. As part of the discussion on uniformity the following colloquy occurred, quoting Proceedings & Debates of the Constitutional Convention 1867-1868 (vol 1, p 572):
"Why should you compel the personal attendance of an elector in the city to have himself placed on the registry, and not impose the same burden on the elector in the country?”
"In crowded cities there is a necessity for personal attendance, because of numbers and want of acquaintance among the persons living contiguous, in order to ascertain that they are legal voters in the district. In the country districts every *31 man knows his neighbor, and so extensive is the acquaintance that the right of every person in a town to vote is known by those at the polls.”
The Constitution containing this section was not approved by the People.
(2) The addition to the Constitution in 1894 of a modified form of the section proposed in 1867. This new amendment distinguished between two uniform systems of registration.
(a) personal registration by voters in cities or villages having 5,000 or more inhabitants.
(b) nonpersonal registration by voters in other areas of the State. This distinction resulted from a feeling that personal registration would be an unnecessary hardship for farmers and other citizens in rural and lightly populated areas of the State.
(3) The proposal of various amendments to this section from 1894 to the Convention of 1915 which provided for a change to uniform personal registration. None of these amendments were adopted. During this period the debate centered basically on exceptions for absentee registration. However by 1933 the emphasis had shifted back to personal registration.
(4) A series of annual reports from 1933-1937 by the Secretary of State recommending that the distinction between personal and nonpersonal registration be abolished, and that one uniform system of personal registration be effectuated throughout the State. There was no favorable action taken on these recommendations at the 1938 Convention.
(5) The supplementation of article II at the Convention of 1938 by including sections 6 and 7 providing for permissive permanent personal registration and personal identification of voters.
The provision for signature identification of voters where personal registration is required was a statutory elaboration of the provisions for personal registration and the preservation of the integrity of the ballot.
(6) The addition by amendment to the Constitution in 1966 of various exceptions for absentee registration which provided that voters who are unable to appear personally for registration because their duties, occupation or business require them to be outside the counties of their residence (plus a special provision for New York City), shall not be required to register personally.
*32 (7) The report of the Temporary State Commission on the Constitutional Convention of 1967 suggested that the specific sections on absentee registration and voting should be uniform, stating as its reasons for the change that:
(a) absentee registration provisions are mandatory whereas absentee voting provisions authorize but do not require absentee voting.
(b) absentee registration provisions limit registration to circumstances where "duties, occupation or business” require the registrant to be elsewhere whereas absentee voting can be for any reason.
(8) The new Constitution proposed at the 1967 Constitutional Convention which was aimed at eliminating the dichotomy drawn between cities and villages with greater than and those with less than 5,000 citizens. The proposed article II sought to provide for absentee registration throughout the State, quoting therefrom under section 2 of article II, Suffrage: "The legislature shall provide for the conduct of elections, for the nomination of candidates for public office, for the registration of and voting by voters including those not appearing in person”.
This proposed Constitution was defeated by the voters on November 7, 1967.
As can readily be seen this problem has been the subject of a continuing and long-standing tradition of debate and disagreement by public spirited citizens with honest differences dating from 1867 to the present.
Although there has been a history of good intention via the amendment route to change the law, the proponents for such change have consistently failed either at the Constitutional Convention or at the hands of the voters. Section 153 appears to be an attempt to enact into law what many groups, including this court, consider to be a favorable piece of legislation aimed at expanding the potential electorate.
Governor Carey recognized the problem and in his message of approval on June 3, 1975 he stated: "The only objections that have been raised relate to a possible question under the State Constitution. In light of the overriding importance of the bill’s provisions, which will go into effect on December 1 of this year. I think that the appropriate forum for an expeditious review and resolution of any such question is in the courts.” (NY Legis Ann, 1975, p 421.)
*33 In response to Governor Carey’s message it should be observed that the Court of Appeals has already spoken out on this subject in Matter of Fraser v Brown (203 NY 136) where the court struck down a statute requiring personal registration of electors residing outside of villages with a population of 5,000 or more. The law was found to be incompatible with the last sentence of section 4 of article II, which is nearly identical to the present provision in section 5 of article II, which is at issue here.
In examining that provision, the court said (p 141): "The entire sentence divides voters into two classes, depending on the political division in which they reside. The first clause applies exclusively to voters who reside in cities or villages with the population named, and expressly restricts the registration of that class to such as apply in person. The second clause applies exclusively to voters who do not reside in such cities or villages and impliedly permits the registration of that class at the first meeting of the officers in charge without personal application. The second clause commences with the word 'but,’ which, as thus used, indicates transition of thought or a change in the nature of the rule, and reading on we find the change to be that voters residing in country districts need not apply in person”. (Emphasis added.)
The court goes on to say (p 141): "The obvious reason for the distinction is that personal appearance before the board is much less convenient in those localities where many electors live far from the place of registration, than in cities and villages where they live comparatively near.” (Emphasis added.)
Thus, it is unmistakably clear that the phrase "upon personal application only” can only be interpreted to require registration in person. The interpretation of section 5 of article II, espoused in Fraser still stands and has not been overruled.
In addition to the legislative history and the holding of Fraser, above cited, the language of the Constitution itself is as clear as it could possibly be in its description of what kind of application is necessary. The restrictive phrases, personal, an adjective, and only, an adverb, are both certain and emphatic. They lend themselves to only one unmistakable interpretation, namely, an in person application. If there is any other meaning conceivable, the continuation of the sentence wherein it states that in communities of less than 5,000 there *34 is no need to apply in person makes it unequivocal. In establishing 5,000 as a cutoff for "not in person” or "in person” application, the Constitution has created two uniform classes of people. The words that distinguish these two classes are "in person” and "not in person”. Otherwise there would be no distinction. To further dramatize the fact that in cities over 5,000 inhabitants "in person” registration is required is the amendment to section 5 of article II in 1966, where exceptions to "in person” registration were provided for various groups of voters.
An argument is advanced that assuming there is an ambiguity as to the meaning of "personal application”, the court is required by law to make every effort to attach a meaning which will uphold the constitutionality of that law. However, in the instant case there is no reasonable doubt that the law is manifestly and absolutely incompatible with the New York State Constitution which specifically requires personal registration in cities and villages having 5,000 inhabitants or more. Such a requirement can only be changed by constitutional amendment by means of a legislative enactment. The Legislature cannot legislate in direct violation of the unmistakable meaning of section 5 of article II of the New York State Constitution.
This court does not disagree that this is a good law. Any law enfranchising more people is valuable to a democratic society, but the enactment of section 153 of the Election Law is an obvious attempt to circumvent the Constitution and procedure contained therein for amendment.
This court is surprised that the Legislature enacted this statute when it is patently obvious that it is in direct contravention with the State Constitution, the supreme law of New York State.
If the Legislature wants to change the method of voter registration, it must follow the procedure set forth by passing legislation in two successive legislative sessions and then submitting that legislation to the voters as a constitutional amendment.
For the foregoing reasons, the court declares section 153 of the Election Law to be unconstitutional and contrary to section 5 of article II of the New York State Constitution.
There has also been raised the issue that section 5 of article II violates the Federal Voting Rights Act (US Code, tit 42, *35 § 1971, subd [a], par [2], cl [A]) and the Fourteenth Amendment to the United States Constitution.
Perhaps on appeal this issue may raise some question; however, it is the view of this court that section 5 of article II of the New York State Constitution is not a denial of equal protection nor does it set forth an unreasonable standard. The key issue is reasonableness. A distinction drawn as a matter of convenience for people who live in sparsely populated areas is not unreasonable. The proponents of this argument should realize that they are dealing here with a double-edged sword. It was not so long ago that a similar argument was made on behalf of those people who were seeking uniform personal registration throughout this State. Therefore, this court does not find any conflict between section 5 of article II of the New York State Constitution and the Constitution of the United States and/or the Federal Voting Rights Act.
Permanent injunction is granted restraining and enjoining respondents from accepting application for registration and enrollment by mail unless proof is shown that applicants qualify pursuant to specific exceptions as defined in section 5 of article II of the New York State Constitution.