## STATE OF GEORGIA *v.* THE TRUSTEES OF THE CINCINNATI SOUTHERN RAILWAY AND THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY.

### IN EQUITY.

No. 21 Original.   Argued November 7, 1918.—Decided November 18, 1918.

In the absence of language suggesting a different intention, a grant of the use of a railroad right of way must be taken as granting the right of way itself. So *held*, where the purpose was to supply a roadbed for a trunk line, necessitating expenditure by the grantee. P. 28.

A grant of a railroad right of way to a corporation, or to perpetual trustees holding for corporate uses, does not need words of succession to be perpetual. *Ib.*

A grant of right of way for a railway from which great public benefit is expected *held* not a gratuity within the provision of the Georgia constitution forbidding the general assembly to grant any donation or gratuity in favor of any person, corporation, or association. P. 29.

By the Act of October 8, 1879, the State of Georgia granted a perpetual right of way for the Cincinnati Southern Railway, not a revocable license.

Bill dismissed.

THE case is stated in the opinion.

*Mr. William A. Wimbish* for complainant.

*Mr. Edward Colston,* with whom *Mr. Michael M. Allison, Mr. Washington T. Porter, Mr. John Weld Peck* and *Mr. Henry T. Hunt* were on the briefs, for defendants.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought in this Court by the State of Georgia to prevent the defendants from longer occupying or using any portion of the right of way of the Western and Atlantic Railroad, a railroad built and owned by the

plaintiff State. The question, although argued at con-siderable length, is a very short one. On October 8, 1879, the State passed an act sufficiently explained by its contents.[1] On August 21, 1916, reciting that the Cincinnati

[1] An Act granting right-of-way to the Cincinnati Southern Railway, where its route adjoins that of the Western and Atlantic Railroad.

Section I. *Be it enacted by the General Assembly of the State of Georgia,* That whereas the city of Cincinnati has nearly completed the Cincinnati Southern Railway, a grand trunk line which will be of great benefit to the State of Georgia, forming a most important feeder and, practically, an extension of the Western and Atlantic Railroad, which is the property of the State, and giving to our commerce the advantage of a direct and admirable connection with the railway system of the North and West;

*And whereas,* said railway reaches the Western and Atlantic Railroad at Boyce's Station, and for the most of the distance to the termini of the two railroads in Chattanooga, their routes run parallel to and adjoining each other, a distance of about five miles;

*And whereas,* it is to the advantage of both railroads to be able to locate their tracks and works close together, thus saving expense to one in construction, and to both in maintaining the road-bed and facilitating railroad operations; and giving to both railroads the advantage of a stronger and firmer road-bed through a route subject to overflow by floods in the Tennessee river; there is hereby granted to the Trustees of the Cincinnati Southern Railway, for the use of said railway, the use of that portion of the right-of-way of the Western and Atlantic Railroad between Boyce's Station, Tennessee, and the Chattanooga, Tennessee, terminus that lies westerly of a line running parallel with, and nine and a half feet westerly from the center of the track of the Western and Atlantic Railroad, so as to admit of laying track, if desired, near enough to the track of the Western and Atlantic Railroad to leave the distance between the centers of tracks fourteen feet, and between the nearest rails of the two railroads nine feet; *Provided always,* that this grant is subject to the consent and approval of the lessees of the Western and Atlantic Railroad as to the term of their lease; *Provided further,* that the grade adopted by the said Cincinnati Southern Railroad [*sic*] along and over the aforegranted right-of-way shall always be the same as that of the Western and Atlantic Railroad.

Sec. II. *Be it further enacted,* That all Acts and parts of Acts inconsistent with this Act are hereby repealed. [Laws 1879, No. 234].

Southern Railway now is controlled by a competitor of the Western and Atlantic road and that the Western and Atlantic needs the space, Georgia undertook to repeal the former act and to treat it as giving a license only, that the State was free to revoke. [Laws 1916, No. 539.] The defendants say that the words "there is hereby granted to the Trustees of the Cincinnati Southern Railway, for the use of said railway the use of that portion of the right-of-way of the Western and Atlantic Railroad" &c. grant a right of way in fee.

The Ohio statute under which the Cincinnati Southern Railway was constructed by the City of Cincinnati provided for a board of trustees to be appointed and kept filled by the Superior Court of the city, to have control of the fund raised by the city, and to acquire and hold all the necessary real and personal property and franchises either in Ohio or in any other State into which the line of railroad should extend. Therefore the grant to the trustees was the proper form for a grant in effect to the Railway, as it was styled in the title of the Georgia act, or to the city if the city was in strictness the *cestui que trust.* No other facts of much importance appear. Considerations are urged on behalf of Georgia to show that the motives for a perpetual grant were weak, but nothing that affects the construction of the words used or that shows that they are not to be given their ordinary meaning, as indeed the argument for the plaintiff agrees. But if that be true, *cadit quaestio.* A grant of the use of a right of way is the grant of a right of way in the ordinary meaning of words, and a grant of a right of way to a corporation or to perpetual trustees holding for the corporate uses does not need words of succession to be perpetual. The words "and its successors" or "in fee" would not enlarge the content of a grant to a corporation. *Owensboro* v. *Cumberland Telephone & Telegraph Co.,* 230 U. S. 58, 66. *Detroit* v. *Detroit Citizens' Street Ry. Co.,* 184 U. S. 368, 395.

*Great Northern Ry. Co. v. Manchester, Sheffield, & Lincoln-shire Ry. Co.*, 5 DeG. & Sm. 138, 146. If a grantor wishes to limit the effect of words sufficient on their face to convey a fee it should express the limitation in the instrument. The purpose of the grant in this case, to supply a roadbed for a trunk line, necessitating considerable expenditure on the part of the grantee, confirms, if confirmation were required, the legal effect of the words unexplained. *Louis-ville* v. *Cumberland Telephone & Telegraph Co.*, 224 U. S. 649, 663. *Llanelly Ry. & Dock Co.* v. *London & North-western Ry. Co.*, L. R., 8 Ch. 942, 950. *Great Northern Ry. Co.* v. *Manchester, Sheffield, & Lincolnshire Ry. Co.*, 5 DeG. & Sm. 138.

We think it unnecessary to refer to the language in detail beyond saying that there is nothing in the statute to suggest an intent to limit the scope of the grant and that such expressions as *"Provided further,* that the grade adopted by the said Cincinnati Southern Railroad along and over the aforegranted right-of-way shall always be the same as that of the Western and Atlantic Railroad," further confirm our interpretation, as does also the requirement of the consent of the lessees "as to the term of their lease," since those words imply that that grant is of something more that does not require their assent. Elaborate discussion of the circumstances seems to us superfluous. But it is necessary to mention the objection that by the constitution of Georgia the general assembly was forbidden to "grant any donation or gratuity in favor of any person, corporation, or association," and that there was no consideration for this grant. Even if the contemplated and invited change of position on the part of the Cincinnati Southern Railway and the benefit to the State expressly contemplated as ensuing from it were not the conventional inducement of the grant, and so, were not technically a consideration, we are of the opinion that the grant was not a gratuity within the meaning of

the state constitution. A conveyance in aid of a public purpose from which great benefits are expected is not within the class of evils that the constitution intended to prevent and in our opinion is not within the meaning of the word as it naturally would be understood. We deem further argument unnecessary to establish that the State of Georgia made a grant which it cannot now revoke.

*Bill dismissed.*