S03A0160. CAMPBELL et al. v. STATE ROAD & TOLLWAY AUTHORITY et al.
(583 SE2d 32)

FLETCHER, Chief Justice.

The State of Georgia filed a petition to confirm and validate the issuance of Federal Highway Grant Anticipation Revenue Bonds, Series 2002 (Garvee Bonds) in an amount not to exceed $822 million. Rejecting a taxpayer challenge, the trial court concluded that the Joint Resolution between the State Transportation Board and State Road & Tollway Authority (SRTA), which empowers the authority to issue the bonds, was not an unconstitutional contract or gratuity. The primary issue on appeal is whether the joint resolution violates the certain-contracts-prohibited clause in the Georgia Constitution.[1] Because the joint resolution does not pledge the state's credit or impose any obligation on the state to pay the authority's revenue bonds from the state treasury, we hold that the joint resolution is not a contract prohibited by the Georgia Constitution. Therefore, we affirm the trial court's order validating and confirming the bonds.

---

[1] See Constitution of the State of Georgia of 1983 art. VII, sec. IV, para. IV.

## FUNDING FOR HIGHWAY CONSTRUCTION

Prior to 1995, federal law mandated that states limit their use of federal highway grants to the payment of the principal on any bonds issued by the state for highway projects other than the interstate highway system.[2] That year the United States Congress enacted the National Highway System Designation Act of 1995 to give states more flexibility in financing highway construction and other transportation projects.[3] Section 122 of title 23 of the United States Code was amended to permit the use of federal-aid highway funds to reimburse states for the principal and interest on bonds or other debt financing instruments, as well as the costs associated with their issuance.[4] As a result, several states have issued grant anticipation revenue vehicle bonds or Garvee Bonds,[5] described as "debt backed primarily by guaranteed federal transportation grants from the highway trust fund."[6]

In 2001, the General Assembly enacted a bill to empower SRTA to issue Garvee Bonds in Georgia to fund highway construction and to use future federal-aid highway reimbursement funds to retire the bonds.[7] In May 2002, SRTA and the State Transportation Board entered into a resolution dividing their responsibilities on the project.[8] The joint resolution approved a list of road projects, gave SRTA the power to issue Garvee Bonds to finance the projects, and provided that SRTA would pay the bonds from federal-aid highway

---

[2] See 23 U.S.C.S. § 122 (1994) (amended 1995); see also S. Rep. No. 104-86 (1995) (existing section 122 of title 23 of the U.S. Code limits federal participation to retirement of bond principal on former federal-aid primary and urban systems and interstate substitute projects).

[3] See National Highway System Designation Act, Pub. L. No. 104-59, § 311, 109 Stat. 568 (1995); see also S. Rep. 104-86 (section 122 amended to define eligible bond costs, provide greater flexibility to states for federal-aid projects constructed with bond proceeds, and permit states to leverage additional infrastructure investment).

[4] See 23 U.S.C.A. § 122 (b) (2002).

[5] See *Higganbotham v. State of Oklahoma*, 328 F3d 638 (10th Cir. 2003) (affirming dismissal of complaint challenging constitutionality of Oklahoma act permitting issuance of Garvee bonds and of federal payments to states under 23 U.S.C. § 122); Submission of Interrogatories on House Bill 99-1325, 979 P2d 549, 559 (Colo. 1999) (holding transportation revenue anticipation notes constituted a "multiple-fiscal year direct or indirect district debt" requiring voter approval under the Colorado Constitution).

[6] Humberto Sanchez, *Fitch Sees Amount of Outstanding Garvees Doubling by 2004*, THE BOND BUYER, April 30, 2002, at 3; see OCGA § 32-10-90.1 (2001) (defining "garvee bond" as any bond issued by SRTA that is an eligible debt financing instrument under 23 U.S.C. § 122 or is otherwise to be repaid or reimbursed from federal funds).

[7] See State Road & Tollway Authority Act, Act No. 389, 2001 Ga. Laws 1251 (codified as amended in scattered sections of the Georgia Code of Public Transportation, title 32 of the Official Code of Georgia).

[8] See OCGA § 32-10-67 (a) (2001) (empowering the Governor to call a joint meeting of SRTA and the board to initiate projects and pass an appropriate resolution dividing responsibilities).

funds.

The State of Georgia filed a petition in August 2002 to confirm and validate the issuance of the Garvee Bonds. Bob Campbell and Gerry Conway as taxpayers, citizens, and voters of the State of Georgia filed a complaint in intervention. They objected to validation as a violation of the certain-contracts-prohibited clause, the gratuities clause, and other provisions of the Georgia Constitution.[9] Denying the objections, the trial court confirmed and approved the Garvee Bonds. The trial court found that the resolution is not a "contract that is intended to constitute security for bonds" and is not an unconstitutional gratuity because the road projects are for a public purpose and expected to generate great benefits. The taxpayers appeal.

## THE PROHIBITED CONTRACTS CLAUSE

1. The certain-contracts-prohibited clause in the Georgia Constitution does not prohibit all contracts between a state department and public authority. It prohibits only the contracts with public entities that have the effect of securing bonds and pledging the state's full faith, credit, and taxing power to guarantee repayment of the authority's bonds. First adopted in 1972, the constitutional provision expressly states:

> The state, and all state institutions, departments and agencies of the state are prohibited from entering into any contract, except contracts pertaining to guaranteed revenue debt, with any public agency, public corporation, authority, or similar entity if such contract is intended to constitute security for bonds or other obligations issued by any such public agency, public corporation, or authority and, in the event any contract between the state . . . and any public . . . authority or similar entity, or any revenues from any such contract, is pledged or assigned as security for the repayment of bonds or other obligations, then and in either such event, the appropriation or expenditure of any funds of the state for the payment of obligations under any such contract shall likewise be prohibited.[10]

This amendment was adopted to enable the state to directly incur public debt for public facilities through general obligation bonds, ending the state's practice of indirectly obligating the state's full

---

[9] See Ga. Const. art. VII, sec. IV, para. IV (prohibiting contracts with public authorities that are intended to constitute security for authority-issued bonds); id. art. III, sec. VI, para. VI (a) (prohibiting donations or gratuities).

[10] Ga. Const. art. VII, sec. IV, para. IV.

faith, credit, and taxing powers to ensure repayment of authority-issued bonds.[11]

A review of the joint resolution's provisions shows that it is not a constitutionally prohibited contract. The resolution approves a list of transportation projects, empowers SRTA to issue bonds in a fixed amount to finance the projects, enables SRTA to receive Georgia's federal-aid highway payments,[12] directs SRTA to pay over to the Department of Transportation (DOT) any federal funds that are not needed to pay the debt or costs of a reserve fund,[13] and authorizes DOT and SRTA to enter into a contract placing DOT in charge of all bond-financed projects.[14] None of the joint resolution's provisions either pledges the state's credit or imposes any obligation on the state to provide monies from the state treasury to pay the revenue bonds as they become due or in the event of a default.

Moreover, other related documents support the conclusion that the state is not pledging its credit or obligating its taxing power to guarantee repayment of the Garvee Bonds. The trust indenture between SRTA and the trustee provides that the bonds "shall not constitute a debt or general obligation of the State of Georgia, [or] a pledge of the faith and credit of the State of Georgia," and does not obligate the state "to levy or to pledge any form of taxation" for the repayment of the bonds.[15] In the event that federal highways grants are eliminated or reduced, a financial guaranty insurance policy that the authority intends to purchase, rather than the state's general fund, will stand behind the bonds.

In summary, the joint resolution directs and enables the state board and SRTA to take certain actions, but it does not create a binding contract that is forbidden under the Georgia Constitution. Because the joint resolution between the board and authority does not have the effect of securing the bonds or pledging the state's credit or taxing power for their repayment, we hold it is not a contract that violates the certain-contracts-prohibited clause of the Georgia Constitution.

---

[11] See *Sears v. State of Georgia*, 232 Ga. 547 (208 SE2d 93) (1974).

[12] See OCGA § 32-10-63 (7) (2001) (providing statutory authority for SRTA to accept any federal highway or transit funds); OCGA § 32-2-2 (a) (7) (2001) (designating DOT and SRTA as the proper state agencies to discharge all duties imposed on the state by any federal act allotting federal funds for public roads and other transportation purposes).

[13] See OCGA § 32-10-72 (7) (2001).

[14] See OCGA § 32-10-90.1 (d) (2001).

[15] See Trust Indenture §§ 203, 401 & 1302; see also OCGA § 32-10-99 (2001) (credit of state not pledged).

## GRATUITIES CLAUSE

2. If the joint resolution is not a prohibited contract, the taxpayers contend that it is an unconstitutional gratuity. They argue that DOT's assignment of its federal-aid highway funds over the next 20 years to pay SRTA's obligation to the holders of the Garvee Bonds violates the gratuities clause in the Georgia Constitution.

The gratuities clause in the Georgia Constitution provides that "the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public."[16] The United States Supreme Court has interpreted this provision as not applying to a "conveyance in aid of a public purpose from which great benefits are expected."[17] Similarly, this Court has repeatedly held that there is no gratuity when the state receives a substantial benefit in exchange for the use of public property.[18]

Contrary to the taxpayers' contentions, the joint resolution permitting SRTA to receive federal highway funds is not a gratuity to the authority or its bondholders. First, state law makes clear that SRTA may spend the federal highway funds solely for public road and transportation purposes. OCGA § 32-10-63 sets out the powers conferred generally on the authority, including the power to construct transportation projects, accept and administer federal highway funds, and issue revenue bonds. OCGA § 32-10-73 provides that all monies received by the authority are designated as trust funds to be used solely as provided in the article creating and governing SRTA.[19] OCGA § 32-10-72 specifies the ways the authority may expend any revenue in excess of its obligations. Second, the use of federal funds to construct public transportation projects is for a public purpose and results in substantial benefits to the state.[20] Because SRTA is permitted to spend federal highway funds only on public transportation projects and these projects provide substantial benefits to the state and its citizens, we conclude that the joint resolution does not violate the gratuities clause in the Georgia Constitution.

## ANNUAL APPROPRIATIONS PROVISION

3. Finally, the taxpayers contend that SRTA may not constitutionally receive federal-aid highway funds because it is not a department or agency of the state. In essence, the taxpayers are arguing

---

[16] Ga. Const. art. III, sec. VI, para. VI.

[17] See *McLucas v. State Bridge Bldg. Auth.*, 210 Ga. 1, 11 (77 SE2d 531) (1953) (quoting *Georgia v. Cincinnati So. Ry.*, 248 U. S. 26 (39 SC 14, 63 LE 104) (1928)).

[18] See, e.g., *Garden Club of Ga. v. Shackelford*, 274 Ga. 653, 654 (560 SE2d 522) (2001).

[19] See OCGA §§ 32-10-60 to 32-10-110 (2001).

[20] See *Garden Club*, 274 Ga. at 655; *McLucas*, 210 Ga. at 11.

that OCGA § 32-10-63 (7), the statute that authorizes SRTA to receive federal-aid highway funds, violates the constitutional provision requiring the General Assembly to make annual appropriations for the operation of state departments and agencies.[21]

The annual appropriations provision provides as follows:

> (b) The General Assembly shall annually appropriate those state and federal funds necessary to operate all the various departments and agencies. To the extent that federal funds received by the state for any program . . . are changed . . . , such excess, changed or unanticipated federal funds are hereby continually appropriated for the purposes authorized and directed by the federal government in making the grant.[22]

By its terms, this provision places an affirmative duty on the General Assembly to appropriate sufficient funds annually to state departments and agencies to ensure their continuing operation.[23] It does not expressly or implicitly prohibit the General Assembly from designating a state authority to receive federal funds for valid public purposes.

Other constitutional provisions provide authority for the General Assembly to direct federal funds to state entities other than departments and agencies.[24] Immediately following the annual appropriations provision, the Georgia Constitution states: "The General Assembly shall by general law provide for the regulation and management of the finance and fiscal administration of the state."[25] In addition, the constitution gives the General Assembly "the power to provide by law for . . . [t]he participation by the state and political subdivisions and instrumentalities of the state in federal programs."[26] We conclude that these provisions gave the General Assembly the power to enact OCGA § 32-10-63 (7) and related statutes[27]

---

[21] See Ga. Const. art. III, sec. IX, para. II (b).

[22] Id.

[23] See *Gregory v. Hamilton*, 215 Ga. 735, 737 (113 SE2d 395) (1960) (purpose of appropriation provisions in 1945 Constitution was to end the practice of earmarking particular taxes for use by a specific department and "require the General Assembly to appropriate from the general fund specific amounts for each fiscal year for the support of each department or agency").

[24] See Ga. Const. art. III, sec. VI, para. I (giving the General Assembly the power to make all laws not inconsistent with the federal and state constitutions).

[25] See Ga. Const. art. III, sec. IX, para. II (c).

[26] Ga. Const. art. III, sec. VI, para. II (a) (3); see also OCGA § 32-10-62 (2001) (authority is an instrumentality of the state).

[27] See OCGA § 32-5-1 (a) (2001) (designating Office of Treasury and Fiscal Services as recipient of federal highway funds, except for funds directed to SRTA); OCGA § 32-5-2 (2001) (all federal funds received under § 32-5-1 are continually appropriated to DOT, except

authorizing SRTA to receive federal-aid highway funds.

The fallacy in the taxpayers' appropriations challenge is their assumption that the annual appropriations clause requires the legislature to make appropriations every year of all federal funds received by the state. The Georgia Constitution provides that "all revenue collected from taxes, fees, and assessments for state purposes, as authorized by revenue measures enacted by the General Assembly, shall be paid into the general fund of the state treasury."[28] It further provides that no funds "shall be drawn from the treasury except by appropriation made by law."[29] Unlike its restrictions on state funds, however, the Georgia Constitution does not require that federal funds be deposited into the general fund. Moreover, the Attorney General of Georgia has concluded that "gifts and grants, whether federal or private," are one source of state revenue that an agency does not have to pay into the general fund.[30] If state law does not require that federal highway grants be deposited into the general fund, then they are not subject to the additional requirement that funds may be drawn from the treasury only by appropriation.

In conclusion, the joint resolution providing for the issuance of the Garvee Bonds does not violate the certain-contracts-prohibited clause in the 1983 Constitution because the resolution is not a binding contract that pledges the state's credit or imposes obligations on the state's treasury. It does not violate the gratuities clause because the use of federal highway funds for public transportation projects results in substantial benefits to the state and its citizens. Finally, it does not violate the annual appropriations clause because the General Assembly has the power under the constitution to enact general laws designating a state authority as a recipient of federal highway grants. Because the joint resolution is constitutional, we affirm the trial court's order confirming and validating the issuance of the Garvee Bonds.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 2003.

*Meadows, Ichter & Bowers, Michael J. Bowers, Christopher S. Anulewicz, David G. Michell, Bruce E. Bowers, Casey, Gilson & Leibel, George P. Shingler*, for appellants.

---

for funds directed to SRTA).

[28] Ga. Const. art. VII, sec. III, para. II (a); see also *Gregory v. Hamilton*, 215 Ga. at 737 (interpreting similar provision in 1945 Constitution).

[29] Ga. Const. art. III, sec. IX, para. I.

[30] See 1977 Op. Att'y Gen. 77-77, at p. 141 (Ga. 1977) (discussing five sources).

*Paul L. Howard, Jr., District Attorney, Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General, Shirley R. Kinsey, Assistant Attorney General, Sutherland, Asbill & Brennan, John H. Mobley II, William D. Barwick, Thomas A. Farnen, Laurance J. Warco, Thomas, Kennedy, Sampson & Patterson, P. Andrew Patterson, King & Spalding, Richard G. Woodward*, for appellees.