In the Supreme Court of Georgia

Decided: June 30, 2014

S14A0792. AVERY et al. v. STATE OF GEORGIA et al.

MELTON, Justice.

This case regards the superior court's validation of a $3.6 million bond, known as the Paulding County Airport Authority Revenue Bond. The bond will be issued by the Paulding County Airport Authority, and the proceeds will be used to widen and extend the taxiway at the Paulding County Airport to accommodate commercial passenger jets. Pursuant to the bond resolution, the Airport Authority, which manages the Airport, and Paulding County will enter into an intergovernmental agreement ("IGA"). Under the terms of this ten-year IGA, Paulding County and the Airport Authority will cooperate to construct the expanded taxiway, which is located on property owned by both the Airport Authority and Paulding County. The IGA obligates the Airport Authority to operate, maintain, and provide the facilities necessary to use the improved taxiway. In exchange, Paulding County is required to pay the principal and

interest payments on the bond. Paulding County is also obligated to use its taxing power to raise money, should there be any shortfall in and for payments.

In addition, on October 22, 2013, the Airport Authority and Silver Comet, a commercial aviation company leasing a large portion of the airport terminal for twenty years, entered into a separate agreement regarding the expansion of the airport taxiway. The Silver Comet agreement states that Silver Comet "wishes to provide the [Airport] Authority with an incentive to issue revenue bonds for the purpose of expanding the taxiways at the Airport." That incentive is Silver Comet's agreement to pay the Authority "the principal amount of the Bonded Indebtedness as well as any interest associated with repayment of the Bonded Indebtedness" until it is paid in full. This agreement does not, however, eliminate the County's obligation to pay principal and interest on the issued bonds.

Procedurally, at a September 18, 2013 meeting, the Airport Authority unanimously approved a resolution authorizing the issuance of the bond. The Airport Authority also approved the IGA. This meeting occurred at the Airport Authority's regular meeting place and was open to the public. A portion of the September 18, 2013 meeting, however, was conducted in executive session. It

appears that the bond was approved prior to the beginning of the executive session. At an open meeting on October 22, 2013, the Airport Authority supplemented the bond proposal through a supplemental resolution. The Airport Authority also ratified all of its prior actions taken at the September 18, 2013 meeting during its October 22, 2013 meeting. Paulding County approved the terms of the bond resolution and also approved the IGA with the Airport Authority at its regular meeting on October 8, 2013. The October 8, 2013 meeting was open to the public and notice of the meeting was posted publicly. The County approved the supplemental bond resolution during its regular meeting on October 22, 2013, which was also open to the public. Paulding County later petitioned the superior court to validate the bond pursuant to OCGA § 36–82–75, and after the notice of the validation proceeding was published, Anthony Avery and Susan M. Wilkins (collectively Avery) were allowed to intervene and raise opposition to the bond. Among other things, Avery contends that the bond would violate both the Debt Clause and the Lending Clause of the Georgia Constitution. The trial court disagreed, and entered an order validating the bond. Avery appeals this ruling.

1. Avery contends that the trial court erred in its determination that the

3

contract between Paulding County and the Airport Authority qualifies as an enforceable intergovernmental agreement. We disagree.

Article IX, Section V, Paragraph I (a) of the 1983 Georgia Constitution, sometimes referred to as the Debt Clause, sets certain debt limitations for governmental entities, and provides that these entities may not incur a "new debt" without the consent of a majority of qualified voters.[1] Nonetheless, an exception[2] to this rule is set forth in Art. IX, Sec. III, Par. I (a) of the 1983

---

[1] 1983 Georgia Constitution, Art. IX, Sec. V, Par. I (a) provides: The debt incurred by any county, municipality, or other political subdivision of this state, including debt incurred on behalf of any special district, shall never exceed 10 percent of the assessed value of all taxable property within such county, municipality, or political subdivision; and no such county, municipality, or other political subdivision shall incur any new debt without the assent of a majority of the qualified voters of such county, municipality, or political subdivision voting in an election held for that purpose as provided by law.

[2] "The [intergovernmental contracts] clause does not supersede other provisions of the Constitution, such as the debt clause, which places limitations on the powers of government. It merely carves out exceptions. Mulkey v. Quillian, 213 Ga. 507 (100 SE2d 268) (1957)." Nations v. Downtown Development Authority of City of Atlanta, 255 Ga. 324, 327 (2) (a) (338 SE2d 240) (1985) ("Nations I"). It is clear a municipality may enter into a contract authorized by the intergovernmental contracts clause for the future expenditure of funds without violating the debt clause of Art. IX, Sec. V, Par. I (a). Nations v. Downtown Development Authority of City of Atlanta, 256 Ga. 158 (1) (345

4

Constitution, which provides:

> The state, or any institution, department, or other agency thereof, and any county, municipality, school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other or with any other public agency, public corporation, or public authority for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide.

The prerequisites for such an intergovenmental contract are satisfied in this case. It is evident that the IGA is between appropriate governmental entities, and its term does not exceed fifty years. In addition, the agreement relates to both the provision of services and the joint use of facilities. The Airport Authority agrees to manage and maintain the expanded taxiway, and Paulding County, in return, agrees to provide funding and manage the debt required to be incurred to complete the expansion. In addition, the expansion, itself, allows Paulding County to reap the benefit of commercial flight service.[3] The record includes

SE2d 581) (1986) (Nations II).

[3] Indeed, Section 5.2 of the IGA states that the Airport Authority "agrees to provide airport facilities and service for the citizens of the County through the operation of the [expanded taxiway.]"

testimony that these benefits may include, among other things, a safer airport and economic benefits along with new jobs. Finally, the agreement deals with services and facilities about which Paulding County has the authority to enter contracts.

> Pursuant to Art. IX, Sec. II, Par. III (a) (9) of our constitution, [Paulding] County is authorized generally to undertake to provide for "[p]ublic transportation" and, pursuant to OCGA § 48–5–220 (14), [Paulding] County is authorized specifically to expend tax revenues to provide for an airport facility. [Paulding] County's contract [regarding] the use of the airport facility to be acquired and expanded by the Authority is, therefore, a valid intergovernmental contract.

Clayton County Airport Authority v. State, 265 Ga. 24, 25 (1) (453 SE2d 8) (1995).

2. Avery argues that the bond issuance provides an improper benefit to Silver Comet, thereby violating both the Lending Clause and the Gratuities Clause of the Georgia Constitution. There is no violation of either clause.

(a) Counties and some other governmental entities are limited in the extension of their credit to others. Art. IX, Sec. II, Par. VIII of the 1983 Georgia Constitution provides, "The General Assembly shall not authorize any county, municipality, or other political subdivision of this state, through taxation,

6

contribution or otherwise, to appropriate money for or to lend its credit to any person or to any nonpublic corporation or association except for purely charitable purposes." Avery maintains that the bond resolution acts to extend Paulding County's credit to Silver Comet. It does not. The bond resolution and the IGA require Paulding County to extend its credit for its own purposes, namely the benefit of the taxiway expansion. The agreement between the Airport Authority and Silver Comet does not alter this result. Under this agreement, Silver Comet is, at best, extending its credit to Paulding County. As a result, the trial court did not err by rejecting Avery's claim based on the Lending Clause.

The bond resolution also does not violate the Gratuities Clause of the Georgia Constitution.

> The gratuities clause in the Georgia Constitution provides that "the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public." Ga. Const. [of 1983], Art. III, sec. VI, para. VI.] The United States Supreme Court has interpreted this provision as not applying to a "conveyance in aid of a public purpose from which great benefits are expected." See McLucas v. State Bridge Bldg. Auth., 210 Ga. 1, 11 (77 SE2d 531) (1953) (quoting Georgia v. Cincinnati So. Ry., 248 U.S. 26 (39 SCt 14, 63 LE 104) (1928))]. Similarly, this Court has repeatedly held that there is no gratuity when the state receives a substantial benefit in exchange for the use of public property. See,

7

e.g., Garden Club of Ga. v. Shackelford, 274 Ga. 653, 654 (560 SE2d 522) (2001).

Campbell v. State Road & Tollway Authority, 276 Ga. 714, 718 (2) (583 SE2d 32) (2003).

Contrary to Avery's characterization of the facts of this case, Paulding County and the Airport Authority have not extended a gratuity to Silver Comet. As discussed above, Paulding County's issuance of the bond creates a substantial benefit for the county, namely the presence and use of an airport which can accommodate commercial passenger flights. This is a direct benefit to the Airport Authority and Paulding County, and the fact that Silver Comet receives a secondary benefit as being the commercial airline service renting part of the terminal and landing flights on the expanded taxiway does not change this result. See, e.g., Nations v. Downtown Development Authority of City of Atlanta, 256 Ga. 158 (345 SE2d 581) (1986) (Nations II).

3. Avery contends that the trial court erred in its determination that sufficient public notice was given for the bond validation hearing. OCGA § 36-82-76 provides:

> Prior to the hearing of [a bond validation] case, the clerk of the superior court of the county in which it is to be heard shall publish,

8

> once during each of the two successive weeks immediately preceding the week in which the hearing is to be held, a notice to the public that on the day specified in the order providing for the hearing of the case the same will be heard. Such publication shall be in the newspaper which is the official organ of the county in which the sheriff's advertisements appear.

This notice "is designed to give information to the citizens of the municipality, county, or political division about to issue bonds, of the pending proceeding to confirm and validate the same. . . . If the notice is sufficient to put the individual citizen on notice that the municipality, county, or political division of which he is a resident is seeking to validate bonds, and the time of hearing of the proceeding, the statutory purpose has been subserved." Rhodes v. City of Louisville, 121 Ga. 551, 553-554 (49 SE 681) (1904).

The public notice issued for the bond resolution states that, on October 28, 2013, the superior court would hear the case of the "STATE OF GEORGIA v. PAULDING COUNTY AIRPORT AUTHORITY and PAULDING COUNTY GEORGIA, Civil Action File No. 13CV003741TB." In a scrivener's error, the notice goes on to state that the proceeding would regard the validation of a bond issued by the Paulding Industrial Building Authority. Avery argues that, because of this scrivener's error, the notice was insufficient. The notice makes clear,

9

however, that it is meant to refer to a case (including the civil action number) involving the Airport Authority, not the Industrial Building Authority. While the scrivener's error might have created some confusion, it cannot be said that the trial court erred in its determination that notice was sufficient, as the record supports a finding of substantial compliance. Id.

4. Finally, Avery contends that the trial court erred in its determination that the Airport Authority did not violate the Georgia Open Meetings Act when it entered into an executive session at its meeting on September 18, 2013.[4] The Open Meetings Act, OCGA 50-14-4, provides:

> (a) When any meeting of an agency is closed to the public pursuant to any provision of this chapter, the specific reasons for such closure shall be entered upon the official minutes, the meeting shall not be closed to the public except by a majority vote of a quorum present for the meeting, the minutes shall reflect the names of the members present and the names of those voting for closure, and that part of the minutes shall be made available to the public as any other minutes. . . . (b) (1) When any meeting of an agency is closed to the public pursuant to subsection (a) of this Code section, the person presiding over such meeting or, if the agency's policy so provides, each member of the governing body of the agency attending such meeting, shall execute and file with the official minutes of the meeting a notarized affidavit stating under oath that

---

[4] The bond was not discussed during the executive session. This finding is supported by a notarized affidavit of the Chairman of the Airport Authority.

10

the subject matter of the meeting or the closed portion thereof was devoted to matters within the exceptions provided by law and identifying the specific relevant exception.

Pretermitting the question of whether the Airport Authority properly went into an executive session at the September 18, 2013 meeting, the bond and a supplemental resolution to it were considered at a subsequent meeting on October 22, 2013. At this meeting the bond, as modified by the supplemental resolution was approved, and no executive session occurred. Since the bond action was discussed and acted upon at the subsequent open meeting, Avery's contentions regarding problems with the prior meeting do not affect the validity of the Authority's ultimate decision to issue the revised bond. See Schoen v. Cherokee County, 242 Ga. App. 501 (2) (530 SE2d 226) (2000).

Judgment affirmed. All the Justices concur, except Nahmias, J., not participating.

11