**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MILLER, P.J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 27, 2021**

# In the Court of Appeals of Georgia

A21A1143, A21A1144, A21A1145, A21A1146. BENE v. STATE
    OF GEORGIA et al. (four cases)

GOBEIL, Judge.

In these related appeals, the State brought bond validation petitions seeking a judgment confirming and validating the Fulton County Development Authority's (the "Authority") (the State and the Authority are collectively referred to as the "appellees") issuance of proposed taxable revenue bonds and related security intended to finance four development projects in Fulton County. Julian Bene, a Fulton County resident, intervened in the proceedings and filed objections. The superior court subsequently entered orders validating and confirming the bonds and bond

security, and Bene appeals. For the reasons explained more fully below, we affirm the superior court's orders validating the bonds.

The bonds at issue in these appeals relate to the following four economic development projects in and around Atlanta, Fulton County: (1) $85.5 million to fund the construction of a hotel complex with a retail component located in Atlantic Station (Case No. A21A1143); (2) $55 million to fund the construction of a mixed use commercial development located at 1246 Allene Avenue, Atlanta (Case No. A21A1144); (3) $78 million to fund the construction of a multifamily housing facility and economic development project located in Fulton County (Case No. A21A1145); and (4) $115 million to fund the construction of a mixed use (office and retail) development located at Northside Drive and Ethel Street, Atlanta (Case No. A21A1146).[1]

The transactions share a common structure, and this structure is relevant to the issues on appeal. Specifically, the petitions sought to create a bond transaction leasehold estate, where, in consideration for the issuance of the bonds, the Companies agree to transfer fee simple title in the projects to the Authority, and the Authority and

---

[1] For purposes of this opinion, the term "Company" or "Companies" will be used to denote any of the four private companies involved in the respective bond projects. The projects will be referred to as "project" or "projects."

the Companies agree to execute a lease agreement under which the Companies would have the right to possession of the respective projects for a term of ten years. During the term of the lease, the Authority's interest in the projects will be exempt from ad valorem taxation; only the Companies' leasehold interest is subject to taxation. In connection with the transactions, the Authority and the Companies executed "Memoranda of Agreement" ("MOA") establishing the valuation methodology to be used in assessing ad valorem taxes on the leasehold estates. The percentage of value for each year for taxation purposes is set forth in the MOAs, starting at 50 percent of the fair market value in the first year after completion of the construction and ramping up to 95 percent of the fair market value in the tenth year following construction. At the conclusion of the lease term, the Companies would have the right to purchase the projects for nominal consideration of $10 pursuant to the terms of the lease agreement.

After Bene intervened in the proceedings and filed objections, the superior court conducted a hearing and subsequently entered orders validating and confirming the bonds and bond security as required by the Development Authorities Law (OCGA § 36-62-1 et seq.).[2] Specifically, in its comprehensive orders, the superior court

_____

[2] The superior court held one hearing as to all four cases.

3

concluded that (1) the projects are "sufficiently definite and concrete;" (2) the Authority may operate within the City of Atlanta, and the City's municipal charter is not a bar to the Authority's operation there; (3) the bonds are not subject to the Redevelopment Powers Law (OCGA § 36-44-1 et seq.); (4) the methodology the Authority used to value the leasehold estates is proper; (5) the MOAs do not restrict the Fulton County Board of Assessors'(the "Board") discretion in valuing taxable assets; (6) the Board derives consideration from the MOAs; (7) the MOAs do not violate the Taxation Limitation Clause of the Georgia Constitution (Art. VII, Sec. I, Par. I) and is not barred by the Georgia Constitution's Intergovernmental Contracts Clause (Art. IX, Sect. III, Par. I (a)); (8) the structure of the bond transaction does not violate OCGA § 36-62-8 (b) (listing permissible purposes for bond proceeds, including "for the ultimate purpose of paying, directly or indirectly . . . all or part of the cost of any project . . . ."); (9) the leasehold's value is not affected by the lease termination provision; (10) the Board's use of a 50 percent "[r]amp-[u]p" methodology to arrive at the annual fair market value of the Companies' leasehold interests is proper; and (11) the bond transactions do not violate the Georgia

4

Constitution's Gratuities Clause (Art. III, Sec. VI, Par VI (a) (1)).[3] The superior court

also rejected Bene's arguments that the bond transactions involve political questions

best left to the political branches; and the transactions are "sham[s]," and their only

purpose is to provide tax breaks to private companies. These appeals followed.

Because the parties agree that the underlying facts are not in dispute, we

"conduct[ ] a de novo review of the record in determining whether the [superior] court

committed plain legal error." *Sherman v. Dev. Auth. of Fulton County*, 317 Ga. App.

345, 346 (730 SE2d 113) (2012) ("*Sherman I*") (citation and punctuation omitted).

Bene raises the same or similar arguments in each appeal, as set forth below.

1. In related arguments, Bene argues that the superior court erred in validating

the bonds because the appellees failed to comply with OCGA § 36-82-75. As further

described below, we find no reversible error.

First, Bene contends the appellees failed to comply with OCGA § 36-82-75,

which requires the bond validation petitions to state "for what purpose the bonds are

---

[3] Because the project at issue in Case No. A21A1143 is a hotel, the superior court included the additional finding that the project is tax-exempt as to the Authority. See OCGA § 36-62-2 (6) (H) (vi). The superior court's order in Case No. A21A1146 included the additional finding that the office project at issue in that case "meets the definition of 'project' found in OCGA § 36-62-2 (6) (N)," and the Authority's "interest in the [p]roject is tax-exempt under [the Development Authorities Law]."

5

to be issued." Though the petitions, bond resolutions, and lease agreements allege that the purpose of the bonds is to provide financing for the projects, Bene argues that the appellees failed to prove that the purpose of the bonds was as stated in the petition. Further, he claims that the purpose of the bonds in fact differs from what was stated in the petition.

More specifically, Bene asserts that his denial of the allegations concerning the bonds' purpose placed the burden on the appellees to come forward with evidence sufficient to establish a prima facie case that the purpose of the bonds was as stated in the petitions. He takes issue with the superior court's ultimate finding that the proceeds of the bonds will be used to finance the projects, arguing that there was no evidence presented to support such a finding. In addition to the appellees' alleged failure to come forward with this evidence, (which Bene claims is sufficient, standing alone, to warrant reversal of the validation orders), he further asserts that testimony from Al Nash, the Authority's Executive Director, expressly demonstrates that the bonds will not actually finance the projects. Instead, the Company will pay for the projects via separate loans from third-party lenders. Additionally, Bene cites the Authority's trial brief and statements during oral argument wherein it affirmed that the purpose of the bond transaction is to provide a tax break for the Company.

6

Turning to the record before us, we find sufficient evidence of lawful purpose to support the superior court's bond validation orders. Again, OCGA § 36-82-75 provides in relevant part that the petition shall set forth "for what purpose the bonds are to be issued . . . ." Each of the petitions include their stated purpose, in similarly worded language. Specifically, in Case No. A21A1143, the petition notes that the bond proceeds will be "used to finance a portion of the costs of acquisition, construction, equipping and installation of land, improvements and related building fixtures and building equipment . . ." for use as "a mixed-use commercial development and an economic development project under OCGA § 36-62-2 (6) (N) . . . ." The petition goes on to allege that, as determined in the resolution authorizing the bonds,

> the issuance of the Bonds to acquire the Project and the leasing thereof to the Company will be in the public interest of the inhabitants of the County and of the State, . . . the Project and the use thereof will further the public purposes of the [Development Authorities Law] for which the [Authority] was created, and . . . the Project and the Bonds will be sound, feasible, and reasonable.

At the hearing, the superior court heard evidence that the bonds will serve the public interest as set forth in the petition. Specifically, there was evidence that the issuance

7

of the bonds will improve the community, provide jobs, attract other developments, pay for improvements to old infrastructure (including decaying sewer and water lines), cleanup of a public health hazard and an environmental site, and create affordable housing. Thus, there is evidence that the "proposal to issue bonds is sound, feasible, and reasonable," and given the "any evidence" standard, the superior court's "findings about soundness, feasibility, and reasonableness must be sustained on appeal[.]" *Savage v. State*, 297 Ga. 627, 631-632 (3) (774 SE2d 624) (2015).

Despite the evidence of authorized purpose, Bene suggests that we nonetheless must vacate the validation orders because the purpose alleged in the petition was not the same as that proven at the hearing. However, he cites no authority for this proposition. And, as further discussed below, we are not persuaded that his contention, even assuming true, demands that we vacate the validations orders given the petition as a whole and the facts of this case – supporting the authorized purpose of the bonds and substantial compliance with OCGA § 36-82-75.

The appellees, while conceding that the language in the petitions may be "imprecise" in certain allegations, counter that Bene misunderstands OCGA § 36-82-75's requirement that the petition set forth the purpose of the bonds, and, in any

8

event, the petitions actually allege the true purpose of the bonds, and that they will ultimately be used to finance a portion of the project.

This Court's recent decision in *Long v. Dev. Auth. of Fulton County*, 352 Ga. App. 815, 816 (835 SE2d 717) (2019), supports the appellees' position. In *Long,* this Court considered a petition with nearly identical language to the instant petitions and affirmed the superior court's validation of bonds issued by the development authority. Id. The *Long* petition described that the bond would be "used to acquire, construct and equip land, improvements and related building fixtures and building equipment . . . to be leased to [the respective appellee company] for use as a mixed-use commercial facility and an economic development project under OCGA § 36-62-2 (6) (N)." Id. at 816 (2). In rejecting Long's challenge to the purposes of the bonds, we found that Long had failed to cite "persuasive authority showing that this description of the purpose of the bonds was deficient and did not comply with OCGA § 36-82-75" and held that the petitions "substantially complied with the statutory requirement in this regard." Id. at 816-817 (2) (citation and punctuation omitted).

In any event, the bonds will indirectly provide financing for a portion of the projects by reducing the overall tax burden associated with the projects. Specifically, as testified to by Nash, and as recognized by the trial court, the Company would not

9

have agreed to go forward with the project but for the leasehold agreement. Bene is correct that the projects are being financed by third-party lenders, but the relevant transaction structure will assist in paying the debt back over a period of time. Under the cumulative facts of this case, the purpose of the bonds is authorized by statute, and the appellees proved that the bonds will be used for the purposes outlined in the petitions. We therefore find no merit in Bene's claims of errors on these issues.

2. Bene also argues that the superior court erred by concluding that the bond transaction does not violate the Gratuities Clause. We disagree.

"The gratuities clause in the Georgia Constitution provides that 'the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public.' Ga. Const. of 1983, Art. III, Sec. VI, Par. VI." *Avery v. State*, 295 Ga. 630, 633 (2) (b) (761 SE2d 56) (2014) (citation and punctuation omitted). The Supreme Court of the United States has interpreted this provision as not applying to a "conveyance in aid of a public purpose from which great benefits are expected." *State of Ga. v. Trustees of Cincinnati Southern R.*, 248 U. S. 26, 30 (39 SCt 14, 63 LEd 104) (1918). Similarly, the Supreme Court of Georgia has held repeatedly that there is no gratuity when the state receives a

10

substantial benefit in exchange for the use of public property. See, e.g., *Garden Club of Ga. v. Shackelford*, 274 Ga. 653, 654-655 (1) (560 SE2d 522) (2001).

According to Bene, the transactions violate the Gratuities Clause because Section 2 of the Bond Purchase Agreement permits the Company to obtain the bonds from the Authority without paying monetary consideration; and the Company has the ability to purchase the Authority's interest in the project at any time for $10 (represented by the Company's option to terminate the lease at any time under the lease agreement and to immediately reacquire the Authority's interest in the project for $10). The Authority challenges these arguments, claiming that the sale-leaseback transaction creates a tax efficiency, and the economic development expected from the projects will provide the type of "substantial benefit" to the public that has been held not to implicate the Gratuities Clause. Additionally, the Authority maintains that the Company's obligation to first convey its fee simple interest and promise to complete the project is sufficient consideration, such that the "Company's ability to acquire [the Authority's] interest in the [p]roperty for $10[ ] is of no consequence to this analysis."

In its orders validating the bonds, the superior court found that the evidence supported a finding that Fulton County will derive a "substantial benefit" from the projects at issue. At the hearing, Nash testified that the projects at issue would

11

improve the county's infrastructure, create hundreds of jobs, expand the tax rolls, and bring economic development. For example, the Atlantic Station hotel project (Case No. A21A1143) will create approximately 800 construction jobs, 127 full-time jobs, and it is estimated that the project will result in $14.1 million in system and infrastructure improvements, and $9.8 million in estimated net new property taxes generated over a ten-year period. Based on this evidence, the superior court did not err in concluding that the projects provided a substantial benefit for the county, and thus the bond transactions do not result in an unconstitutional gratuity. See *Avery*, 295 Ga. at 634 (2) (b) (finding the county's issuance of bond "creates a substantial benefit for the county, namely the presence and use of an airport which can accommodate commercial passenger flights); *Garden Club of Ga.*, 274 Ga. at 655 (1) (affirming trial court's ruling that statute pertaining to outdoor advertising did not violate gratuities clause where DOT presented evidence that "the traveling public benefits from billboard advertising by receiving information that assists them in making decisions").

3. According to Bene, the superior court placed the burden of proof on him as to all factual matters, and this burden-shifting was in error. We disagree with Bene's characterization of this issue and find no error.

In each order, the superior court stated that "[Bene] has [failed] to prove the facts and contentions he alleges in his Answer and Affirmative Defenses of Intervenor." Bene contends this language indicates that the court impermissibly placed the burden of proof on him, when the State in fact had the burden to make out its case for validation. The appellees argue that Bene in fact had the burden of proof as to each affirmative defense challenging the validation process.

While Bene is correct that the appellees were required to prove the facts necessary to obtain validation, this obligation does not necessarily alleviate the burden the intervenor has to show cause as to why the bonds should *not* be validated. At the hearing, the superior court noted that the appellees had the overall burden of proof, but Bene had the burden of proof as to all issues where he raised an affirmative defense.

Generally, "(i)f a defendant files an affirmative defense, . . . he has the burden of proving such affirmative defense." *Metro. Publishers Representatives, Inc. v. Arnsdorff*, 153 Ga. App. 877, 878 (1) (267 SE2d 260) (1980). In the context of bond validation proceedings,

> where an intervention has been filed by citizens and taxpayers of the
> political subdivision involved, it is the intervenors who are quasi-

13

defendants, and the technical adversary position between the governing authority and the solicitor general, acting for the State, will not permit these two entities by admissions in pleadings to establish as proved the essential allegations of the petition for validation, but . . . the burden is on the State, acting through its solicitor general, to prove the material facts which are requisite to obtain bond validation; and where there is a total absence of such proof, it is error for the court to render judgment validating the bonds.

*Hattrich v. State*, 116 Ga. App. 281, 283 (3) (156 SE2d 925) (1967) (citation and punctuation omitted). Here, contrary to Bene's contention and based on the superior court's statements at the hearing and in its order, the court did not impermissibly shift the burden of proof. Rather, it correctly assigned the burdens of proof and found that the appellees satisfied their burden of proof, while Bene failed to satisfy his own burden with regard to his affirmative defenses.

4. Next, Bene argues that the superior court lacked jurisdiction to rule on the merits of (a) the Authority's exemption status with regard to ad valorem taxation for the duration of the project; and (b) the ramp-up valuation methodology. We find that the superior court had jurisdiction to make its ruling for the reasons set forth below.

(a) In his initial answer in the superior court, Bene alleged that the court lacked jurisdiction in this proceeding to rule on ad valorem taxation issues because the

14

proper proceeding for such a determination is one brought before the Board of Equalization under OCGA § 48-5-311. In its validation orders, the superior court ruled that it had "jurisdiction over the parties and over the subject matter of this action."

OCGA § 48-5-311 provides the framework for a taxpayer to appeal ad valorem tax issues to the county board of tax assessors, the board of equalization, and ultimately to the superior court. This statute "provides a vehicle for addressing issues related to the valuation, taxability, uniformity and constitutionality of ad valorem taxation." *Dillard v. Denson*, 243 Ga. App. 458, 460 (533 SE2d 101) (2000). Furthermore, it is undisputed that superior courts have exclusive jurisdiction to hear and decide all issues with regard to bond validation petitions. OCGA § 36-82-73. Development authorities are expressly made exempt from taxation under OCGA § 36-62-3. See *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 279 (2) (282 SE2d 880) (1981) ("While the Authority is exempt, a business which takes a leasehold from the Authority is subject to ad valorem taxation on the fair market value of the possessory interest held."). In its orders, the superior court simply reiterated that the satisfaction of the development purposes of the transactions justifies validation, and that tax exemption is a natural by-product of that validation,

as expressly provided by statute. We therefore disagree with Bene's characterization of the superior court's findings on ad valorem taxation matters as a "merits determination." Instead, we recognize that the court, in fulfilling its obligations under OCGA § 36-82-73, included information necessary to the resolution of the validity of the bonds, and we reject this claim of error.[4]

(b) As to Bene's contention that the superior court was without jurisdiction to issue a merits-based decision on the valuation methodology outlined in the MOA, this argument is without merit. In *Sherman I*, we examined a bond validation proceeding wherein the underlying transaction structure was similar to the instant case. Specifically,

> [t]he petition sought to create a bond transaction leasehold estate, where in consideration for the issuance of the bonds, [the company] agreed to transfer fee simple title in the Project to [the Authority], and [the Authority] and [the Company] agreed to execute a lease agreement under which [the Company] would have the right to possession of the Project for a term of ten years. At the conclusion of the lease term, [the Company] would have a right to acquire the Project for nominal consideration.

---

[4] Bene concedes on appeal that even if this Court vacates the superior court's merits-decisions concerning ad valorem tax matters, the bond validation orders may nevertheless otherwise be affirmed.

16

*Sherman I*, 317 Ga. App. at 345-346 (footnote omitted). In connection with the transaction, the Company, the Authority, and the Board "executed a Memorandum of Agreement ("Memorandum") establishing the valuation methodology the Board was to use in assessing ad valorem taxes on the leasehold estate." Id. at 346 (footnote omitted). In affirming the superior court's jurisdiction to address the validity of the Memorandum, we noted that bonds issued under the Development Authorities Law are required to undergo the validation process set forth in OCGA § 36-62-8 (g). Id. at 348 (2). We did not, however, reach the narrow issue of whether the valuation formula was proper because the taxpayer failed to raise it in the superior court. Id. at 349 (3).

Nevertheless, we find the *Sherman I* court's reasoning as to why the superior court had jurisdiction to rule on the validity of the Memorandum itself to be instructive on the issue of whether the superior court had jurisdiction to rule on the valuation methodology in the instant case. Namely, the statutory framework set out in the Development Authorities Law (in particular OCGA § 36-82-73) vests the superior court with exclusive jurisdiction to hear and determine *all* matters relevant to bond validation.

Finally, we find additional support for affirming the trial court's order in *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88 (701 SE2d 472) (2010) ("*Sherman II*"). In *Sherman II*, the taxpayer brought an action for declaratory judgment, injunction, and mandamus against the county Board of Tax Assessors ("BTA") and others, contending that the BTA's method of valuing leasehold estates arising from the local development authority's sale-leaseback bond transaction was (a) illegal and (b) otherwise constituted a failure of] the defendants to perform their duties. Id. at 88. In remanding the case, our Supreme Court implicitly recognized the power of the superior court, in a bond validation proceeding, to evaluate the propriety of the valuation methodology outside the context of the process set forth in OCGA § 48-5-311. Id. at 95 ("Therefore, the present challenge to the memoranda of agreement that set forth the tax assessment formula at issue will only constitute a prohibited collateral attack on a concluded bond validation proceeding if the memoranda were specifically adjudicated in the proceedings and held valid by the bond judgment.").

Accordingly, the aforementioned statutes and underlying rationales in *Sherman I* and *Sherman II* support the superior court's exercise of jurisdiction concerning the issue of the methodology formula expressed in the MOA.

18

5. Bene contends that the superior court erred because the validation order fails to comply with OCGA § 9-11-52 (a), which requires that, upon request, the judgment of the court include written findings of fact and conclusions of law. Bene requested such findings. Specifically, Bene argues that the superior court's order lacked the requisite findings on two issues: (a) whether the court had jurisdiction to address the ad valorem tax issues; and (b) the superior court's basis for concluding that the bond transactions do not violate the Gratuities Clause.

As to the jurisdiction issue, in his answer, defenses, and objections to the bond validation petition, Bene asserted that the superior court lacked subject matter jurisdiction to rule on the tax exempt status of the property interests held by the Authority or the validity of the ramp-up formula. According to Bene, jurisdiction to "test the legal validity of a real property tax assessment is in a proceeding brought under OCGA § 48-5-311." In its validation order, the court correctly noted that OCGA § 36-82-73 vests exclusive jurisdiction over bond validation matters in the superior courts. More specifically, OCGA § 36-82-11 makes clear that the bonds issued by the Authority "shall not be subject to . . . any other law." Based on the foregoing statutory provisions, the court reasoned that it had subject matter

19

jurisdiction to validate the bonds.[5] Therefore, contrary to Bene's assertion, the superior court explained why it had jurisdiction, and that explanation was sufficient to satisfy the requirements of OCGA § 9-11-52.

With respect to the Gratuities Clause issue, the superior court set forth evidence that the projects would create new jobs and promote industry and employment opportunities for the public good. The court then looked to relevant case law, and applied it to the facts of this case to conclude that the Authority had "demonstrated through substantial evidence that the Bonds here provide a substantial benefit to the people of Georgia through economic development and job creation." This inclusion of the relevant facts and application of legal authority complies with OCGA § 9-11-52. Moreover, viewing the superior court's orders as a whole, they contain exhaustive recitations of the underlying facts and corresponding conclusions on a myriad of issues. And, an examination of the hearings before the superior court and a comparison to the validation orders demonstrates that the court's orders contain adequate findings of fact and conclusions of law on the issues Bene now challenges. See *Franzen v. Downtown Dev. Auth. of Atlanta*, 309 Ga. 411, 421-422 (3) (c) (845

---

[5] As explained more fully in Division 4, supra, the superior court correctly concluded that it had subject matter jurisdiction over these issues.

SE2d 539) (2020) (concluding that superior court made adequate findings of fact and conclusions of law, pursuant to OCGA § 9-11-52 (a), to support conclusion that enterprise zone bond proposal and corresponding security provided by infrastructure fees was sound, feasible, and reasonable, despite court's isolated recitation that "both the issuance of the [bonds] and the security therefor are sound, feasible, and reasonable, as demonstrated by the evidence adduced at the hearing, including the fact that the bonds will be issued only upon proof of work completed and expenditures made;" indeed, superior court entered two orders setting forth comprehensive findings and conclusions after three-day hearing, and extensive evidence was in fact presented during hearing regarding mechanics of bond financing structure, and this information was included in record and discussed in trial court's orders). Accordingly, there is no need to remand this case to the superior court for additional findings.

6. Finally, Bene argues that the superior court erred by ruling that the MOA does not limit the Board's discretion as to the methodology used to value the leasehold estate. According to Bene, the MOA, to which the Board is a party, illegally restricts the Board's exercise of discretion by requiring the Board to use the ramp-up formula to value the Companies' leasehold interests. As an initial matter, we disagree

with Bene's characterization that the Board's choice to execute the MOA represents a loss of discretion, rather than an exercise of discretion in and of itself.

More to the point, this Court and the Supreme Court of Georgia have examined ramp-up formulas nearly identical to the one at issue in this case, and have not found the formulas to be inherently unlawful. See, e.g., *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 794, 798-803 (2) (b) (770 SE2d 832) (2015); *Long*, 352 Ga. App. at 823 (4). Specifically here, the superior court found that the MOA confirms that the Board "will use appropriate valuation methodologies in valuing the [p]roject and will follow the law set forth in [*DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*] and [*Sherman v. Dev. Auth. of Fulton County*]." The court then highlighted that:

> The value of neither the fee simple interest of the [Authority] nor the leasehold interest of the Company are established in advance; rather, on an annual basis, the [Board] will appraise the value of [the Authority's] fee simple interest in the subject property using all appropriate valuation methodologies just as it does when valuing any other similar property. The MOA specifically provides that "[t]he determination of the fair market value of the fee interest in any asset in any year following the Tax Commencement Date (prior to being reduced by the applicable percentage) will be subject to periodic reassessment, for which the [Board] will employ its standard valuation methods." . . . In other words,

and of critical importance, *nothing whatsoever in this transaction affects the manner in which the fee simple value of the property at issue will be valued.*

**(Emphasis supplied.) Based on this language in the superior court's orders, and our own reading of the MOA, we disagree that the Board has impermissibly ceded its discretion under the MOA's terms.**

**Finally, Bene has failed to point to evidence that the valuation methodology set forth in the MOA is arbitrary or unreasonable. See *SJN Properties, LLC*, 296 Ga. at 797 (2) ("(T)he overriding issue in this case is whether the valuation method used by the defendants fairly and justly establishes the fair market value of a bond transaction leasehold estate such that the method is not arbitrary or unreasonable.") (citation and punctuation omitted); *DeKalb County Bd. of Tax Assessors*, 248 Ga. at 280-281 (3). See also OCGA § 36-80-16.1 (e). Accordingly, this claim of error is without merit.**

*Judgments affirmed in Case Nos. A21A1143, A21A1144, A21A1145, A21A1146. Barnes, P. J., and Miller, P.J., concur.*